1832.

Town
v.
Needham.

---

## Town *vs.* Needham and Harvey.

Where G. and W., two brothers, were jointly interested in the real estate of their father, as tenants in common, and G. agreed to relinquish his interest in the property in exchange for a quantity of medicines and the good will of his brother's business as a physician, in consequence of which agreement W. took possession of such real estate and made improvements thereon, and afterwards sold the same to T., who also made valuable improvements upon the property ; *Held,* that this was sufficient in equity to take the case out of the statute of frauds, and that T. was entitled to a conveyance of G.'s interest in the property, and to a perpetual injunction against a suit which had been instituted by G. for the recovery of the premises.

Where one of several tenants in common, who is in possession of the premises held in common, claiming title to the whole, sells and conveys the same to a third person, who enters under that conveyance claiming title to the whole, it is such an ouster of the other tenants in common as to bar their right of entry after an adverse possession of twenty years.

1832.

Town
v.
Needham.

Where the owner of real estate suffers another to purchase the estate from a third person, and to erect valuable buildings thereon, under the erroneous belief that he has a good title, and intentionally conceals from the purchaser his claim to the property, such owner will not afterwards be permitted to enforce his legal rights against such purchaser.

One witness is sufficient to sustain an allegation in the bill which is only denied by the defendant according to his recollection and belief.

Where land is conveyed with warranty, and a mortgage is given to the grantor to secure the unpaid purchase money, and the premises are afterwards sold under the mortgage, it seems that the covenants of warranty contained in the original conveyance are not merged, but that they pass to the purchaser of the land under the mortgage sale.

Where the interest of a witness is of such a nature that it can be released, and the adverse party suffers him to be examined without objection, and makes no objection to his testimony before the proofs in the cause are closed, it will be too late to object to the competency of the witness upon the hearing of the cause.

If one tenant in common, who is in possession supposing himself legally entitled to the whole premises, erects valuable buildings thereon, he will be entitled to an equitable partition of the premises, so as to give him the benefit of his improvements.

Sept. 18.     THIS case came before the court on pleadings and proofs. The facts of the case, so far as they are material to the decision, are detailed in the opinion of the court.

*J. C. Parker,* for the complainant.

*N. P. Randall,* for the defendants.

THE CHANCELLOR. It appears by the pleadings and proofs in this cause that the premises in question, a small lot of ground in the town of Granville in the county of Washington, containing about thirty acres, belonged to John Needham, at the time of his death in December, 1798. By his will, he devised one half of his estate to his wife for life, and after her death, one half of the property devised to her, being one fourth of the whole, he gave to his grand son, the defendant, J. N. Harvey, in fee, and the residue of the estate, after the payment of two small legacies, he gave to his two sons, W. A. Needham and G. Needham ; and the latter he appointed executor. At the time of the death of the testator, Harvey, the grand son, who was under age, was living with him in Granville, and G. Needham, the execu-

tor, lived at the same place. W. A. Needham, the other son of the testator, was married and settled in the county of Onondaga, and was in the practice of physic. In the spring of 1800, under an agreement between the two brothers the precise terms of which forms one of the subjects of controversy in this suit, W. A. Needham returned to Granville. He went into possession of the premises in question with his mother, and G. Needham went into the practice of physic in the county of Onondaga, near where his brother had resided. In October, 1805, W. A. Needham being in possession of the premises and claiming to be the owner thereof, sold and conveyed the same, with warranty, to S. M. Stewart. For some reason which does not distinctly appear, the mortgage for the purchase money was not executed until January, 1807, when Stewart gave a mortgage to W. A. Needham to secure the payment of $800, the balance of the purchase money ; which mortgage contained the usual power of sale. This mortgage was foreclosed by W. A. Needham, in September, 1808, by a sale under the statute, and the premises were bid off by and conveyed to E. White, for $710. In April, 1810, White conveyed the premises to the complainant with warranty. It is objected on the part of the defendants that the deed from White only conveyed to the complainant a part of the premises in controversy ; as it appears, from the deed, that the second course in the description of the premises therein varies from the description contained in the mortgage. And because, in the deed, the lot is described as 28 acres of land, although in the complainant's bill, and in the mortgage, the premises are described as containing 30 acres. Upon a particular examination of the two descriptions, however, I am satisfied that both are intended to embrace the same piece of land, and that such is the legal construction of the deed. All the witnesses speak of the premises as the same lot ; and as the lot is bounded by known and visible landmarks, it is not material whether it is said to contain thirty acres, "more or less," as described in the complainant's bill and in the mortgage, or twenty eight acres, "be the same more or less," as mentioned in the deed from White. The first course in both descriptions runs "on the north side of the highway to Abra-

ham Bishop's west line." In the bill and mortgage, the second course is thus described : "Thence south on Abraham Bishop's said west line, forty minutes west, twenty four chains to a white cedar stake and stones ;" and in the deed from White, it is thus : "thence south, six degrees west, twenty four chains to a white cedar stake and stones." The subsequent courses; distances and monuments being the same, the white cedar stake and stones in the first description is undoubtedly the same which is also described in White's deed as the termination of the second course. The distance of the second line and the commencement and termination thereof being the same, and being also controlled by fixed monuments, must necessarily include the same land, notwithstanding the difference of nearly six degrees in the supposed course of the line ; unless, indeed, Bishop's west line between these two points was a crooked line, which from the evidence in this case cannot be presumed. If that line was crooked, the distance between the two points could not be the same. It must therefore, for the purposes of this decision, be taken as settled that the complainant is entitled, under the deed from White, to the whole of the premises described in the complainant's bill and in the mortgage, to which White became entitled under the foreclosure and sale to him.

By the will of J. Needham, his grand son, J. N. Harvey, became entitled to one fourth part of the premises, as a vested remainder in fee after the termination of the life estate of his grand mother. And the defendant, G. Needham, became seised of a similar estate in one eighth of the premises ; and also of an interest in possession in one fourth part thereof immediately on the death of the testator. As the premises had been held adversely, under the conveyance to Stewart, for more than twenty years previous to the commencement of the ejectment suit, there is no doubt that the claim of G. Needham to this last mentioned quarter of the premises was barred by the statute of limitations. If one having only a right as tenant in common with others, but claiming to be owner of the whole premises, conveys the whole to a third person, who enters under such conveyance claiming title to the whole premises, it is such an ouster of the other

tenants in common as to bar their right of entry after twenty years adverse possession. (*Prescott* v. *Nevers*, 4 *Mason's Rep.* 327. *Bradstreet* v. *Huntington*, 5 *Peters' Rep.* 402. *Culler* v. *Motzer*, 13 *Serg. & Rawl.* 356. *Jackson* v. *Smith*, 13 *John. Rep.* 406. *Clapp* v. *Bromagham*, 9 *Cowen's Rep.* 530.) If, as pretended by the defendant, W. A. Needham was a mere tenant at will of his share of the premises, the moment he conveyed the whole property, with warranty, to Stewart who entered claiming adversely, the tenancy was at an end. G. Needham might therefore have brought an ejectment to recover his fourth of the premises immediately; and having neglected to bring his suit for twenty years, the remedy as to that part is barred by lapse of time. But his right of action as to his reversionary interest in the half of the premises which was devised to the mother for life, and the right of action of J. N. Harvey as to another portion thereof, did not accrue until after the termination of her life estate, in 1810. They are therefore entitled to recover their respective shares in that half of the premises, unless they have legally or equitably divested themselves of their rights. As the equitable claim of the complainant as against each defendant is separate and distinct, and as the facts and principles upon which each claim depends are different, I shall proceed to examine them separately.

First, as to the claim to equitable relief against G. Needham. The complainant insists that he has a right to a release of the legal interest of G. Needham in the premises, under the agreement between the two brothers; by which agreement G. Needham was to relinquish to W. A. Needham all his interest in his father's estate, in exchange for the stand and medicines of the latter as a physician in the county of Onondaga, and W. A. Needham was to return to Granville, and take care of his mother and settle their father's estate. G. Needham does not absolutely and positively deny this agreement, as he qualifies it by saying no such agreement was made according to the best of his knowledge recollection and belief. This method of denying a fact, which it is hardly possible that the party could have forgotten if it had ever existed, is always suspicious. And it will be presently

seen that these expressions in this answer were probably not introduced as mere words of course. By the testimony of W. A. Needham and his wife, it appears that shortly after the death of the father, W. A. Needham received a letter from this defendant, inviting him to remove back to Granville to take charge of their mother and to settle up the affairs of the estate. That some time in the succeeding winter, the defendant came to Onondaga and manifested much solicitude to induce his brother to return to Granville. That he proposed to the witness to move back to Granville and settle the estate, to take care of their mother and the defendant J. N. Harvey, their nephew, who was then under age, and to pay off the debts due from the estate, and that the witness should put him in possession of his practice as a physician at Onondaga, together with his medicines, &c. ; for which he was to release to the witness all his interest in the estate. That W. A. Needham finally consented to the proposition, and removed back to Granville, relinquishing to his brother an extensive practice of physic, together with his medicines, shop, furniture, books, &c. ; and the latter agreed to execute a release of his interest in the estate whenever it might be wanted. That about the time of the sale to Stewart, W. A. Needham wrote to his brother to execute a release of his claim to the land. In answer thereto, he received a letter from G. Needham, in which he relinquished his right to the land, and promised to execute a more formal release if it should be deemed necessary. And that upon this letter the sale to Stewart was finally closed and a part of the purchase money paid. It also appears that under the original agreement W. A. Needham went into possession of the premises and made some permanent improvements thereon ; that Stewart, after his purchase, also built a barn upon the lot, and that the complainant has since erected a valuable two story dwelling house thereon. This is sufficient in equity to take the case out of the statute of frauds ; as it would be a gross fraud upon the complainant for the defendant to refuse to convey the legal title, under such circumstances. The testimony of the brother and the sister-in-law of the defendant, G. Needham, is also corroborated by the deposition of Parker, who swears to the defendant's admission,

in 1800, that his brother ought to have his quit claim of the premises, and that he was willing to give him such a conveyance. It is no excuse for the conduct of this defendant, after lying by for twenty-seven years and allowing the complainant and those under whom he derived title to make substantial and lasting improvements on the premises under the supposition that they had a good title, that he has now suffered himself to be used as the tool of his ·nephew to perpetrate this fraud, as appears by the testimony of A. C. Corbin and W. A. Needham.

It is objected, however, in behalf of this defendant, that his brother and his sister-in-law are interested witnesses, in consequence of the covenant of warranty contained in the deed to Stewart. If that covenant was not merged by the giving back of the mortgage to W. A. Needham and by the subsequent foreclosure, which I am inclined to think it was not, it undoubtedly was a covenant running with the land and passed to the complainant under the conveyance upon the mortgage sale and the subsequent deed of White. But this was an interest which the complainant was perfectly competent to release ; and the witness swears that, previous to his being examined as such witness, he was fully and entirely released and discharged by the complainant from all actions or causes of action which he might or could have against him touching the suit or the land. If the wife had any right of dower in the estate which was never in fact conveyed to her husband, such right would only give her a contingent and remote interest in the question in controversy, and not an interest in the event of the suit. Such an interest could not disqualify her from being a witness. But the question of interest in respect to these witnesses, even if there had been no release, could not be raised for the first time at the hearing. When the testimony in·this court was taken in secret, as was formerly the practice, if it appeared from the deposition of a witness that he was interested in the event of the suit, his testimony might be objected to and suppressed after the order to pass publication, or at the hearing. This mode of proceeding was then necessary, as the adverse party had no opportunity to object to the competency of the witness until

the testimony in chief in the cause was closed. But after the statute authorizing and directing an open examination of the witnesses, a different practice was adopted, in analogy to the practice pursued in courts of law. And the party must now object to the testimony of the witness at the time of his examination, if his interest is then known, so as to enable the adverse party to show a release or discharge of the interest ; or at least the objection should be made before the testimony in the cause is finally closed. Where the interest is of such a nature that it can be released, and the party suffers the witness to be examined without objection and waits until after the rule to close the proofs has been entered, it will then be too late for him to make the objection. (*The Mohawk Bank* v. *Atwater*, 2 *Paige's Rep.* 54.) Here the defendants were apprised, by the testimony of Parker, nearly a month before the examination of W. A. Needham and wife, that the conveyance to Stewart contained a covenant of warranty ; and yet they suffered these witnesses to be examined without objection. Again ; 'the annexing of the release to the deposition, or the production of it as an exhibit, was a matter of form which might be waived ; and as the defendants permitted secondary evidence to be given of the contents of the release without objection, it is now too late to object that the release should have been produced and proved. It would, under such circumstances, be permitting a party to entangle justice in the net of form, to allow him to surprise his adversary with such an objection at the hearing. (*Vide Jackson* v. *Cody*, 9 *Cowen*, 140.) Although this testimony was taken under a commission, the defendants had a right to be present by themselves or their agent, to make objections to the admission of illegal testimony ; or they might at least have given notice of an application to the court to suppress these depositions, which would have furnished the complainant with an opportunity of producing the release and showing that the witness' competency had been restored. I am satisfied this objection ought not to avail the defendant at this time. I cannot, therefore, without violating every principle of justice and equity, permit the defendant G. Needham to continue his suit against the complainant to re-

cover those parts of the premises which were devised to him by the will of his father. The injunction as against him must therefore be made perpetual; and he must release to the complainant all his interest in the premises according to the agreement as established by the proofs.

The allegation in the complainant's bill as to his equitable rights against the defendant Harvey, is, that W. A. Needham also purchased and paid him for his interest in the estate of his grand father; and also that Harvey has suffered the complainant to go on and make valuable improvements upon the premises, without giving him any notice of his intention to assert a claim to the estate. There is no doubt that Stewart and Town made their improvements upon this property in good faith, believing they had the legal title to the whole. If therefore this court should arrive at the conclusion that Harvey was entitled to recover one fourth of the property, there should be a decree for an equitable partition, so that the complainant may have assigned to him that part of the premises on which the buildings have been erected. But I have arrived at the conclusion that Harvey ought not to be permitted to recover any part of the premises. As he had only a reversionary interest in the premises at the time his uncle bought and paid him for his share of the estate, the entry and possession during the existence of the life estate of the widow, which it appears was also purchased and paid for by W. A. Needham, could not, as to that half of the premises, be considered a possession taken and held under the agreement so as to constitute an adverse possession. This defendant might therefore avail himself of the statute of frauds as a defence, if he had not himself practiced a fraud upon the complainant, by suffering him to go on and make valuable erections and improvements upon the premises, without apprizing him of his claim, or that he intended to take advantage of the statute to recover back the land. The defendant Harvey, in his answer, denies all the material allegations in the bill as to the payment for his share of the estate, and all knowledge of the erecting of the house and making the other improvements on the premises. And he also denies that he ever executed any release to W. A. Needham

Town
v.
Needham.

of his interest in the premises. But he swears that if he did receive such payment, or execute a release, he was under age at the time, and that it is not binding upon him. There is no proof whatever as to the age of this defendant, except that he was a minor in 1800 when W. A. Needham removed back to Granville. The allegations in the answer as to his being under age when the place was paid for, and when the release, if any, was executed, are not responsive to any allegations in the bill, and are therefore not evidence in his favor. If he was an infant at that time, the burthen of proof to establish that fact lay on him, and he should have introduced or examined some witness to that point. The testimony of his uncle and aunt is positive that he received a horse, in addition to what had been done for him before, in full for his interest in the estate of his grand father. In answer to the sixth interrogatory, W. A. Needham says both of the defendants did sell to him all their right and title in and to the premises in question, and he has fully paid them for the same; and and that he paid for their shares more than they were really worth at the time. The fact that this defendant received a horse from his uncle is also proved by the testimony of Mrs. Brown. As neither of these defendants has thought it safe to deny the material allegations in the bill positively, but only according to their recollection and belief, the testimony of a single witness to the facts charged was sufficient to establish those facts as against this denial in the answer. It is probable, from the testimony of W. A. Needham, that Harvey actually executed to Stewart a release of his interest in the premises sufficient in law to pass the legal estate, but which cannot now be found, in consequence of Stewart's having gone out of the country. He swears that the instrument executed by Harvey was prepared by the counsel of Stewart. It must therefore have been after the purchase of Stewart, and probably about the time that the mortgage was given for the purchase money, in 1807, as the giving of the mortgage appears to have been delayed for some reason until that time. The answer of Harvey is also contradicted in other particulars, by the testimony of Fross and Corbin. The testimony of these witnesses is material to show that the defendant Harvey was

aware that the complainant was going on and making improvements and erections on the premises, and that he neglected to set up his claim, to enable him to derive an advantage from those improvements. Fross testifies that in 1824 or 1825 Harvey told him that the reason he had not set up his claim sooner was that they, the complainant and others, were making improvements on the land; and he said, "let him go on, and I will have it before long." He also stated to this witness that he had frequently been informed of the improvements which were being made on the land, by a person employed to attend to his interests therein. When this testimony is taken into consideration, in connection with the fact that he delayed asserting his claim to the premises for seventeen years after his right of action, if any, accrued to him by the termination of the life estate of his grand mother, and during which period these improvements were going on, from time to time, I think it is sufficient to bring the case clearly within the principle laid down by Chancellor Kent, in *Wendell* v. *Van Rensselaer*, (1 *John. Ch. Rep.* 354,) that if a man knowingly, though he does. it passively by looking on, suffers another to purchase and to expend money on land under an erroneous opinion as to the title, without making known his claim, he shall not afterwards be permitted to enforce his legal rights against such person. Lord Mansfield carried this principle so far that he would not suffer a man to recover even in a court of law, where he had stood by and seen the defendant build on his land in ignorance of his rights, and without making any objection. (*See* 6 *Durn. & East's Rep.* 556.) But this case is much stronger; for here the interest of the defendant in the premises had been actually purchased and paid for by the person under whom the complainant derived title, if it had not been in fact conveyed.

The defendant Harvey and all persons claiming under him must therefore be perpetually enjoined from prosecuting at law, or otherwise, any action against the complainant, his heirs or assigns, for the recovery or partition of the premises in question or any part thereof. And both defendants must pay to the complainant his costs in this suit to be taxed.