Caeuthees, J.,
delivered the opinion of the court.
The complainants claim the slaves in controversy under a deed of'gift made by Robert Saunders on the fth of September, 1846, to a trustee for the separate use of the complainant, Emily C., his daughter, for life, and then to her children. The defendant, James E. Mason, obtained judgment against James Gunn, husband of said Emily, on the 26th of August, 1846, on notes dated January preceding., Executions issued and were *645 levied upon tbe slaves on tbe 8th of October, 1846, and they were bought by James E. Mason. This is the antagonistic title to that of complainants under the deed.
There is no controversy but that the slaves were the property of Robert Saunders, and whether it passed to his daughter under the deed, or to his son-in-law, Gunn, by gift or possession before that time, is the question in the case.
The facts upon which the' complainants rely for the support of their title are disclosed in the deposition of the 'said Robert Saunders. • The defendants insist that his evidence cannot be looked to, because he is incompetent on account of interest; having warranted the title in his deed of gift of the 7th September, 1846.
This objection cannot be sustained: 1. Because it was not made in the court below. On this subject the rules of practice are, that exceptions for irregularity in taking depositions must distinctly specify the ground of objection, and no other will be noticed by the court, and that a general exception will only raise the question of competency. 10 Humph., 19. 1 Swan, 336. 2 Robinson’s Prac., 336-7. '
But where there is no exception, either special or general, in the court below, none can be taken in this court, not even to incompetency apparent upon the record. 2 Robinson's Prac., 336. 2 Paige, 6. 3 Paige, 555. 3 Liv. Law Mag., 458., 5 Cushman’s Miss. Rep., 19. The reason is most obvious. If the exception had been taken at the proper time, the objection might have been removed by a release, or other unobjectionable evidence obtained to supply the place of that which is disallowed. The rule of practice contended for, would be a surprise- *646 upon tbe party, and often "produce great injustice. He would have a right to suppose that all exception to bis proof was waived, if not made at or before the hearing in the court below.
2. If the objection had been made in time, or could now be made, we are of the opinion that it could not be sustained. What is it? The witness made a deed of gift to complainants, with a warranty of title, and being thus bound to make it good, he cannot be received as a witness to support it against a conflicting title. It is true, that a warranting vendor is incompetent in such a case, but we are not aware of any case or authority that would exclude a donor who had made a voluntary warranty. This distinction has been suggested to the counsel, and no authority has been produced in conflict with this opinion.
The witness then being competent, establishes the title of complainants under the deed. But the defendant insists that his, title should still prevail, because, his debtor, Gunn, held said- slaves as a loan, without any writing recorded, for more than five years before the execution of said deed of gift of September, 1846. The complainants rely upon the proof of Saunders to show, that it was a case of hiring, and not a loan. He states that he took the notes of his son-in-law, Gunn, for the' hire for four years, and for one year of the five neglected it, jrat did not intend to collect them, “except circumstances turned up that might make it necessary to compel him to pay it, although there was no bargain made to that effect.” .He never did make him pay any of the notes, but gave up some of them to his daughter, but yet he holds the note for the first year’s *647 Lire,. 1841. Under this arrangement the slaves were brought to this State, and remained with Gunn up to the time they were sold, and bought by the defendant.
Much proof is made as to the character of his holding; to many he claimed the slaves as his own, and to many others, he said they belonged to his wife and children, to Bobert Saunders, &c. But all this can have no effect upon the turning question; which is, whether 'the transaction was. a loan, so as to fall under the operation of the act of 1801, ch. 25, § 2. Saunders says, his object in taking the notes for the hire, was to prevent Gunn, or any other person, from claiming the slave by “long possession.”
It is contended that this transaction is in substance and in fact, a loan, and that the pretended hiring is a fraud upon the law, and should not be allowed to defeat the rights of creditors under the act. The words of the act are: “When any loan of goods or chattels shall be pretended to have been made to any person with whom, or those claiming possession under him, possession shall have remained for the space of five years, without demand made and pursued by due process at law, on the part of the pretended lender, ***** *** the same shall be taken, as to the creditors and purchasers of the person aforesaid, so remaining in possession, to be fraudulent within this act, and that the absolute property is with the possession,” unless such loan be declared by will or deed, proved and recorded.
It is very clear that Saunders did not intend to part with his right to the property, until the deed of 1846 was made. Down to that time, it is not controverted that the slaves were held' either upon a loan or hiring. *648 As between the parties, Saunders and Gunn, whether the transaction was the one or the other, the relation was that of bailor and bailee; the right would remain in the former without limitation of time, unless there was an adverse holding, with the knowledge of the bailor for three years, which would vest the title in the bailee by virtue of the statute of limitations; or if it were a loan without writing, “proved and recorded” even without claim of title by the loanee, for five consecutive years, it renders the property subject to his creditors, although the title remains unchanged as between the parties themselves. The policy of this act has never been controverted. The possession of property so long is calculated to give credit, and men may reasonably consider the right with the possession, when the same is permitted to remain undisturbed for so long a time. It is easy to avoid its operation by a writing duly proven and recorded.
If the case under consideration was a loan at all, it was for the definite period of five years, and not for an indefinite time which the lender might terminate whenever he chose to do so; which latter is the only case to which the act applies, according to the case of Porter & Allison vs. Armstrong et al., 2 Yerg., 78. The act would seem to contemplate a loan which might be terminated by “demand made and pursued by due process at law.” This could not be done, if the time of j|s duration was fixed by contract.
But we do not consider this transaction a loan at all. It is expressly proven by Saunders, the owner, to have been a contract of hiring. True, he says, he did not intend to collect the hire unless circumstances made *649 it n'ecessary, and that he gave, two. or more of the notes to his daughter, and had enforced 'the payment of none of them. But how can his intentions and purposes affect the nature of the transaction? The question is, whether it was a loan or not, and if not, the statute does not operate upon it. It is a very strong provision by which a man’s title is taken away without his consent, in favor of the creditors of his beneficiary. His only fault is, kindness and humanity too long protracted. It is sustained by considerations of policy alone, and we are not disposed to extend it by latitudinous construction. The owner of the slaves was aware of the law upon this subject — that long possession would endanger his right, in case of a loan, and therefore resorted to a different kind of bailment. He certainly had a right to do so. We are unable to see the force of the argument, that this was a fraud upon the law. He could surely do as he pleased with his own, and collect the hire or not, as might seem good to himself.
The decree of the chancellor will be affirmed, and the cause remanded for an account of the hire.