WILLIAM S. COMBS, Appellant, against DAVID COOPER, Respondent.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

In order to constitute an *estoppel in pais* against the legal owner of real estate, by reason of his voluntary representations in regard to a boundary line, it should appear that the party sought to be estopped, must have been guilty of constructive fraud or gross neglect in regard to the subject matter claimed as an estoppel, in order to conclude him from asserting the fact as it really exists. Or, in other words, there must have been an express design that the act or statement should influence the action of another.

This action was brought to quiet the title to certain real estate in Ramsey county, under the statute relating to actions to determine conflicting claims to real estate. *Stats. of Min.*, *p.* 595, *chap.* 64. The issues of fact were referred to Geo. L. Otis, special referee to hear the testimony, and from his report the Court below found the following facts:

On the 17th January, 1855, one Staples conveyed to one Eleanor Story a certain portion of lot three, block sixty-two, in Irvine's enlargement of Rice and Irvine's addition to St. Paul, describing it by metes and bounds, so as to front 57 feet on Pleasant street and running back 106 feet. Eleanor Story

and husband conveyed the same to the Plaintiff, Combs, on the 20th April, 1855.

That on the 7th March, 1855, said Staples, conveyed to one Charles H. Parker "lot number three, in block sixty-two, (in same enlargement,) being fifty-seven feet on Oak street and ninety feet deep, more or less." On the 10th September, 1855, Parker and wife conveyed the property last described to the Defendant Cooper. The deeds were all warranty deeds, and were duly recorded at or about their respective dates.

That the two descriptions contained in these deeds comprised the whole of said lot three—the westerly portion thereof, fronting on Pleasant street, having been conveyed to Combs, and the easterly portion thereof, on Oak street, to the Defendant. The depth of the lot, between said streets, was 190 31-100 feet.

That soon after the date of the deed aforesaid to said Plaintiff he entered into actual possession of said premises, and commenced the erection of improvements thereon.

That the said Charles H. Parker, at or about the same time, commenced the erection of improvements upon the lot conveyed to him as aforesaid. That a short time prior to the date of the deed aforesaid to the Defendant, the said Plaintiff and said Parker had a conference as to the situation or location of the dividing line between them.

That the said Parker pointed out to the said Plaintiff a certain stake as the point of intersection of the north line of said lot three with said Pleasant street.

That said Plaintiff (believing said stake to be the true point of intersection of said line with said street,) and the said Parker, then measured off on said line a distance of 106 feet from said Pleasant street, leaving as the distance to said Oak street ninety feet, and which included in its limits a certain spring of water which previously had been walled up and rendered suitable for use by the said Parker.

That thereupon the Plaintiff and the said Parker, mutually believing that each was obtaining his full quantity of land, according to their respective deeds of the same, expressly agreed that said point of termination of 106 feet from the

stake aforesaid should be considered the division corner between their respective portions of said lot three, and that a fence should be constructed from said division corner by a line parallel with said Oak street to the southerly line of said lot three. That said fence should be considered the division line between them. That said fence was thereupon built along said line, and was so built at or soon after the date of the deed aforesaid to said Defendant, and the same is still standing. That the portion of lot three, so designated as belonging to said Parker, contained upon it the spring of water aforesaid at the date of said deed to defendant, and was thereby greatly enhanced in value. That the said Defendant, just prior to the date of his purchase of said easterly portion of lot three, had a conversation with said Plaintiff in regard to the division line between the said property.

That at the time of this conversation the division fence aforesaid had not been completed, but its location was designated and marked out, along the line agreed upon as aforesaid, by stakes and pieces of board, so as to be plainly visible. That said Defendant, during said conversation, stated to said Plaintiff that he (Defendant) was about to purchase said property of the said Parker, and wished to ascertain the division line. That said Plaintiff thereupon pointed out the said stakes and pieces of boards as indicating the said line of division, and stated that Mr. Parker had agreed to build the division fence along said line. That at this time said Plaintiff and Defendant supposed and believed that said line was the true dividing line between the said property, according to the terms of their said deeds. That said Defendant purchased the said property of the said Parker, relying upon the aforesaid statements of said Plaintiff as to the said line of division. That said Plaintiff, shortly after the said conversation, erected, at considerable expense, a fence, along what he supposed to be the line of Pleasant street, in front of his said part of said lot, as designated by the stake pointed out by the said Parker as aforesaid. That he built upon his said lot a dwelling house, the location of which was determined by the said supposed line of Pleasant street. That said front fence remained some three years, when it was removed by order of Street Commis-

sioners, as being in said Pleasant street, and not on the easterly line thereof. That the true line of Pleasant street was and is 6 feet and 6-10 of a foot further east than was indicated by the said front fence. That the said division fence was the same distance further east than the true division line between the property aforesaid, according to the terms of the said deed to said Plaintiff. That there was a strip of land 6 6-10 feet in width across the whole width of lot three aforesaid, set over to that part of said lot three, purchased by said Defendant, which did not belong to it according to the terms of the said deed to the said Plaintiff.

That said Defendant has been in possession of said strip of land since the date of his said deed and until the present time, and is still in possession of the same by virtue of the said agreement between said Plaintiff and said Parker. That said Plaintiff, before the commencement of this action, duly demanded possession thereof of the said Defendant, which was refused.

That no survey of said lot three (3), for the purpose of ascertaining the true line of division between said Plaintiff and said Parker, was made until long after the purchase by said Defendant as aforesaid, and no line of division between said parties existed prior to the making of the division line as aforesaid. That the line of division so marked out by the said Plaintiff and the said Parker was acquiesced in as being the true line of division for three years by the said Plaintiff. That in the year 1857 the Plaintiff, being about to sell his said premises, procured a survey thereof to be made, when he discovered for the first time that the said division fence did not stand on the true line between himself and said Defendant, but was 6 6-10 feet further east than it should have been in order to give to said Plaintiff the number of feet called for in his said deed.

Upon the foregoing facts the Court found, as conclusions of law, that an express agreement as to the location of a division line between owners of contiguous lands, when the true line had not been previously ascertained, though by parol, if executed immediately and possession taken in accordance therewith, is binding and conclusive upon the parties to such

agreement, and those claiming under them.  That in case of such express agreement and immediate execution, where the same have had the effect to induce a party to purchase and erect valuable improvements, neither party ought to be allowed to rescind the agreement, although it was made in ignorance of his rights, and does not locate the line truly according to the title deeds of the said lands.  That the Plaintiff is estopped from claiming as his own any part of said lot three which lies east of said division fence.

I further find that said Defendant is entitled to judgment in this action according to the prayer of his answer herein.

From this decision of the Court the Plaintiff appealed.

Points and Authorities of Appellant.

I.  A parol statement or admission as to the boundary of or title to land made by one party, and acted upon by another, will not estop the party making it, unless the statement or admission be attended with actual fraud or concealment, or was made for the purpose of influencing the other.

5 *Metcalf*, 469; *Ib.* 478; 8 *Barbour*, 102; 8 *Wendell*, 483; 3 *Minn.* 311; 20 *Conn.* 98; *Ib.* 563; 28 *Maine*, 525; 25 *Conn.* 250; 10 *Barbour*, 97; *Ib.* 432; *Story on Equity*, 386–393; 2 *Philips on Ev.* 200; 4 *Kent Com.* 270, *and note; Smith's Leading Cases, vol.* 2, *p.* 566; 10 *Bar.* 527; 7 *Ohio*, 99; 31 *Penn. State Reports*, 331; 3 *Hill*, 215.

II.  No estoppel in relation to real estate is created by verbal contracts or admissions.  *Hamlin vs. Hamlin*, 1 *App.* 141.

III.  There is no evidence of any agreement between the parties owning the adjoining lands, named in the pleadings, that the conventional line claimed by Cooper should be the division line of the premises.  Such an agreement would imply a consideration for it which is not shown.  *See evidence in report of Referee.*

Points and authorities of Respondent:

I.  A parol agreement, fixing a dividing line of land and ascertaining its position on the ground, with possession

immediately following, is conclusive on the parties, and cannot be controverted; and such an agreement is not within the statute of frauds. *Lindsay vs. Spinger,* 4 *Harring.* 547; 10 *U. S. Dig.* 85, *sec.* 11; 11 *Johns.* 126; 6 *Wend.* 467; 7 *Cow.* 761; 16 *Wend.* 285; 12 *Wend.* 130; 6 *N. Hamp.* 107; 9 *N. Hamp.* 473; 10 *Wend.* 111; 4 *Wheaton,* 513; 18 *Wend.* 162; 16 *Johns.* 263; 17 *Johns.* 31; 7 *Johns.* 239, *and cases cited;* 15 *N. H.* 504.

II. Where A and B are the owners of separate parcels of the same lots and agree upon and establish a division line, and B afterwards offers his parcel for sale to C, A pointing out such line and representing it to C to be the division line between their respective parcels, and C purchases with direct reference to such representations and line, A is estopped from afterwards claiming beyond the same.

18 *Barbour,* 435–440; 12 *Wend.* 423; 19 *Wend.* 175, 320; 3 *Paige,* 555; 1 *Johns. Ch.* 354; 6 *Johns. Ch.* 169; 12 *Barb.* 128; 6 *Adol & Ellis,* 461; 10 *Ib.* 90; 9 *Foster,* (*N. H.*) 478; 12 *N. H.* 26; 5 *Iowa,* 415; 4 *Sandf. S. C. R.* 361; 2 *Sugden on Vendors,* (7th *Am. Ed.*) 515–17; (1022) *and cases cited;* 2 *Smith's L. Cases,* (5th *Am. Ed.*) 619, 642, 651, 663, *and cases cited;* 2 *American L. Cases,* 698; 4 *Kent's Com.* 261, (9th *ed.*); *Harrison's Digest, vol.* 7, *Suplt.* 614.

SANBORN & LUND, Attorneys for Appellant.

SMITH & GILMAN, and R. F. CROWELL, Attorneys for Respondent.

*By the Court.*—ATWATER, J.   I have had great difficulty in satisfying my own mind as to the proper disposition of this case, resulting from the conflict of authorities as to what constitutes an *estoppel in pais,* and the application of the principle to the various reported cases.   Scarcely any branch of the law has given rise to more discussion, and resulted in so great a difference of opinion among jurists, in the definition and application of the principle to the various cases presented in the Courts for adjudication.   Many of the cases where the principle has been invoked, seem to have been decided by the

views entertained of the equitics of the particular case, and not in accordance with any settled principle. In the Duchess of Kingston's case, 2 *Smith's Leading Cases*, the subject is elaborately discussed, but not with the usual clearness and precision of the learned American Editors of that work, as the student will find little more than a synopsis of the conflicting authorities on the subject, without the result of any settled principle deduced from them. As the case at bar is the first of the kind so far as I am aware, in the Courts of this State, where the doctrine of an *estoppel in pais* has been invoked in regard to a transfer of real estate, it is important that it be decided if possible, on a correct principle which may govern like cases in future; and I shall examine to some extent the cases cited on the argument, as well as others, and endeavor to apply to this case the principle which seems best supported by reason and authority.

I think it is manifest that many of the cases cited by the Respondent, are not applicable as authority, to sustain his position, that the Plaintiff is estopped from asserting his legal rights, by his acts and declarations in the premises. In *Jackson vs. Van Carleur*, 11 *Johns* 123, the parties were held concluded by a line agreed upon between them. But the Court say that "whether Bleecker's line is correct or not, cannot now be made a question between these parties; for they undertook to run and establish a line for themselves, which is the line run by Shephard in his survey about nineteen years ago. After *such a lapse of time and the repeated acquiescence* on the part of the lessors, it would be unjust and inexpedient to disturb that line, admitting that it had been incorrectly settled at first." This decision is placed upon the express ground of lapse of time and repeated acquiescence in the boundary line as agreed upon, and not upon the simple fact, that such division had been made. The case of *Jackson vs. Cole*, 16 *John*, 255, presents an entirely different state of facts from those in the case at bar, and was not decided on the ground that the acts or declarations of the parties had estopped them from asserting their legal rights, although the Court in its opinion says, that, "we are also, of opinion, that the acts of the parties in this case, if it was necessary to have re-

course to them, have definitely fixed the boundary line between lots number 37, and number 46, as held and contended for the Defendants." But the ground upon which this *obiter* is based, appears further from the opinion, not to have been founded on any legal or equitable right, but as the Court remarks, "after patents have issued, and after such long acquiescence, it is now too late to attempt to correct mistakes. If the corners of lots as fixed by the Surveyor General originally, are now to be disregarded, it is not too much to say, that almost every lot in the military tract will be thrown into confusion, and become the source of controversy." It can easily be understood how forcible such a reason would be in the mind of the Court, against disturbing a boundary which, it would appear, had been acquiesced in for a great number of years.

In the case of *Jackson vs. Ogden*, 7 *John*, 238, it was held, as appears by the syllabus, that, "after various mesne conveyances, during a lapse of near eighteen years, the parties should be bound by their actual location under their deeds, according to the metes and bounds given in the original survey, without reference to the map and patents." An examination of that case will clearly show the distinction between it, and the one at bar, and the language of Chief Justice Kent, in delivering the opinion of the Court, shows that the case was not decided on the mere ground that the parties had agreed upon a dividing line, but as he says, "they located according to the facts addressed to the senses, and without having recourse to the Secretary's office; and when the question of location was thus rendered ambiguous or uncertain, by the contradiction between the map and survey, (and both were referred to in the patent and early deeds) a practical location and construction given by the parties, and acquiesced in through a series of transfers, and for a great number of years, until the lands had become cultivated and had grown into value, cannot but operate with great, if not with decisive force." And in this case it will be observed that the Court were divided in opinion.

In *Rockwell vs. Adams*, 6 *Wend.* 467, Savage Ch. J., lays down the rule of law as applicable to the case, as follows:

"That the acts and declarations of parties as to location, may control the courses and distances in their deeds; and, to give operation to such acts and declarations, it is not necessary that their effect should be known to the parties themselves, and that acquiescence in an erroneous location, *for a great length of time*, shall be conclusive upon the party making or acquiescing in such location." So in *McCormick vs. Barnum*, 10 *Wen.* 104, it was held, that "an owner of land is bound by a division line, recognized by his surveyor as correct, where the owner has given deeds in conformity to a map and field book made by the surveyor, and no efficient attempt is made for the period of 22 years to correct the line." In the case of *Kipp vs. Norton*, 12 *Wen.* 127, I understand the Court to decide only, that if there is a *disputed* line between two adjoining proprietors of land, it may be settled between them by a location made by both, or made by one, and acquiesced in by the other for so long a time as to be evidence of an agreement to the line. In that case no express agreement was found, and it was held that acquiescence for a period of only four or five years, did not furnish sufficient evidence to conclude the Plaintiff from asserting his legal title, although the Defendant had erected valuable improvements on the land claimed by Plaintiff. I think it would be a fair inference, that had an express agreement existed as to the line, (as in the case at bar) the Plaintiff would not have been permitted to recover. But I think the opinion would not even then be conclusive upon the case at bar, since the Court there speak only of a disputed line between the parties, and where parties have agreed upon their rights for the purpose of settling or avoiding litigation, by a compromise and perhaps each yielding a part of what he deemed his just rights, an element enters into the case, which does not exist in the present, where no controversy had ever existed between the parties, but each supposed he was taking exactly what his deed gave him.

*Adams vs. Rockwell*, 16 *Wend.* 285, was a case of trespass, involving the question, of whether a party was concluded from asserting his legal claim to ownership of land, by recognition of an erroneous line, and it was held, that "where

lands are described in a deed conveying the same, clearly and distinctly by courses and distances, so that upon actual survey the true location of the tract can be ascertained with absolute certainty, the owner may assert his title to hold according to the true boundaries of his lands, notwithstanding an encroachment has been made upon him by the owner of an adjoining tract, a line maintained in pursuance of such encroachment, recognized by the party encroached upon, and acquiesced in by him for a period of eleven years, if the lands in dispute are in a state of nature." The syllabus states, it is true, that "it seems that if during such acquiescence, expensive improvements by the erection of buildings or otherwise had been made by the occupant upon the premises in dispute, the owner would have been held estopped from setting up the true line." And by inference it may be claimed, that had there been evidence in the case of a deliberate settlement of the erroneous line by express agreement, founded upon a *bona fide* attempt to ascertain the true boundaries by actual survey, according to the courses and distances of the deed, the party would have been estopped. Senator Maison who delivered one of the prevailing opinions, upon this point says: " to deprive a man of his absolute right to the unquestioned fee of his land, according to the doctrine of the Courts, regardless of, or according to the construction which they have given to the statute for the prevention of frauds and perjuries, it should appear most clear and distinct, without the shadow of a doubt, and by testimony the most convincing and satisfactory, that there was an express agreement made between the owners of the adjoining lands, deliberately settling the exact precise line or boundary, or location between them, and an acquiescence therein for a considerable time." He then goes on to show what is meant by this considerable time, and citing a large number of cases, in which acquiescence in an agreed line for a length of time entered into the consideration of the Court, shows that in all but three cases, the time was over twenty years. With these limitations I apprehend the case cannot be regarded as a strong authority in favor of the Respondent.

The case of *Jackson vs. McConnell*, 19 *Wend.* 175 only

holds that acquiescence in adverse possession according to an erroneous line is no bar, unless continued so long that the statute of limitations attaches. It may be urged that the matter of acquiescence for a period of years, is only important as evidence of an agreement with respect to the boundaries, and that where an express agreement is found, defining boundaries, it is conclusive ever after, without reference to lapse of time. But it will be observed that in the case of 16 *Wend.* above cited, it is held that in order to conclude the party there must be in addition to ¡the express agreement an acquiescence therein for a considerable time, by the parties, the period meant being in most cases twenty years and over.

Nor do I think the cases cited in equity sustain the Respondent's position more fully than those above referred to. In *Wendell vs. Van Rensselaer,* 1 *John. Chan.* 344, it was held, that "a person looking on and suffering another, knowingly, to purchase and expend money on land, without disclosing or making known his claim to the land, will not be permitted afterwards, to assert his legal title against such innocent purchaser." This of course, would be actual fraud, which no Court of equity would permit, but is by no means analagous to the case at bar. In *Storrs vs. Baker,* 6 *John. Chan.* 169, it was held that "a person having the legal title, who acquiesces in the sale of the land by another, claiming or having color of title to it, is estopped from afterwards asserting his title against a purchaser; especially, if he has advised and encouraged the parties to such sale to deal with each other." An examination of this case will show a totally different state of facts from that existing in the case at bar, and that the Defendant had no equities on which to rest his case. Barker, the Defendant, had advised and encouraged the Plaintiff to make his purchase, and afterwards sought to assert his legal title, not on the ground of any mistake of fact, but solely that he had mistaken the law of the land, or rather, such was the plea offered to excuse himself from the consequences of his acts. Very properly such plea was disregarded by the Court, and the equities ¹of the purchaser were preferred to his.

The case of *Town vs. Needham,* 3 *Paige* 545, is also cited

by Respondent, but I think differs widely from the one at bar. In that case the Court held, (as appears by the syllabus, which correctly states the ruling on this point,) that, "where the owner of real estate suffers another to purchase the estate from a third person, and to erect valuable buildings thereon, under the erroneous belief that he has a good title, and *intentionally* conceals from the purchaser his claim to the property, such owner will not afterwards be permitted to enforce his legal rights against such purchaser." That a party so conducting would and should be estopped from asserting his legal rights, is too manifest to require more than the bare statement of the proposition, and it is equally clear that the appellant in this case does not occupy any such position, and that his good faith is not in the slightest degree impugned.

The cases above cited show to some extent, the manner in which Courts have applied the doctrine of *estoppel in pais*, to cases in which the location and boundaries of lands have come in question. The doctrine has been largely discussed in other cases, some of which it may be proper to notice. *Dezell vs. Odell*, 3 *Hill.* 215 is a leading case on the subject, and is often referred to in the books. *Bronson J.* defines an *estoppel in pais*, as follows: "Before the party is concluded, it must appear, 1. That he has made an admission which is clearly inconsistent with the evidence he proposes to give, or the title or claim which he proposes to set up. 2. That the other party has acted upon the admission. 3. That he will be injured by allowing the truth of the admission to be disproved." Take this definition as it stands, without modification or limitation, and it would conclude the plaintiff in the case at bar. But I do not think the opinion goes to the same extent. For immediately after he adds, that " the doctrine was well stated by my brother Nelson, in the *Welland Canal Company vs. Hathaway*, (8 *Wen.* 483.) His words are: "as a general rule, a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter." That these two definitions are essentially different, and that a case which

might fall within the letter of the former, would not necessarily be included in the latter, would seem to require no argument, and the case at bar furnishes a striking illustration in point. By the rule laid down in the 8th of Wendell, a party is only to be estopped from asserting the truth, when his words or acts which have influenced the other party can be ascribed to a wrong motive, or at the least, they must have been *expressly designed* to influence the party, and not of that nature which would render it a matter of indifference whether such influence was produced or not. And that such was the view of both cases, (8 *Wend. and* 3 *Hill*) is manifest from the opinions therein, for Justice Nelson adds, " that the acts and admissions of the party operate against him in the nature of an estoppel, where in good conscience and honest dealing he ought not to be permitted to gainsay them." And these views were entirely approved by Justice Bronson, in 3 *Hill*, in which he says, that " it will be found on looking into the books, that the learned Judge did not lay down the rule with too much caution, or with too many limitations." And again, " estoppels by deed or matter of record, sometimes conclude the party without any reference to the moral qualities of his conduct. But estoppels of the kind we are considering are never allowed to operate in that manner." So far therefore as the definition laid down in the 3d *Hill*, differs from that in the 8th *Wend.* the latter must be regarded as the true rule. This rule has been recognized and applied in numerous cases among which may be cited, *Wright vs. Douglass*, 10 *Barb.* 97; *Griffith vs. Beecher*, 10 *Barb.* 432; 4 *Met.* 371; 6 *Hill*, 534; 8 *Barb.* 102; 18 *Conn.* 138; 4 *Kent Com.* 270, *note*; 3 *Minn.* 311.

The case of *Kingsley vs. Vernon*, 4 *Sand.* 361, although professing to have been decided in accordance with the rule, is, I think, at variance with it. In that case the endorser of a bill, after the receipt of notice of protest, on going to take up the bill, was informed by the holder that it had been paid, and, by such information, the endorser was prevented from collecting it of the drawer, who subsequently became insolvent, (the acceptor being insolvent at the time) it was held, that the endorser was discharged from liability, although

such information proved to be erroneous, and was honestly given. If the correctness of that decision be admitted, I do not think it is sufficiently analagous to this case to render it an authority of much, if any, weight. It might well be held that the holder of commercial paper is bound to know whether the same has been paid, and that a statement made that a note had been paid, when the fact was otherwise, was evidence of such gross neglect, that the party should be estopped from asserting. the truth, to the prejudice of an endorser who had relied on such statement. And beside, this was not a case where the holder was to sustain the loss, upon the release of the endorser, since the Court held that the Plaintiff had his remedy against the bank that acted as his agent, on which the loss at that time unquestionably rested, instead of suing the Defendant.

The cases in equity do not go farther than those at law in applying the doctrine of *estoppel in pais*. In 1 *Story's Equity Jur. p.* 429, after stating the principle, he says, *Sec.* 386: "In order, however, to justify the application of this cogent moral principle, it is indispensable that the party so standing by and concealing his rights should be fully apprised of them, and should by his conduct or gross negligence, encourage or influence the purchase, for if he is wholly ignorant of his rights, or the purchaser knows them, or, if his acts, or silence, or negligence do not mislead, or in any manner affect the transaction, there can be no just inference of actual or constructive fraud on his part. For a right can be lost or forfeited only by such conduct as would make it fraudulent and against conscience to assert it." In the next section he states that " there are indeed, cases, where even ignorance of title will not excuse a party." Several cases are cited in illustration of the proposition, to some of which I have not had access, but in regard to those which I have examined, the facts are very materially different from those found in the present case. Indeed the author himself states in *Section* 391, what limitation he places upon the proposition, when he says that " in all this class of cases, the doctrine proceeds upon the ground of constructive fraud, or of gross negligence, which in effect implies fraud. And, therefore, where the circumstances of the

case repel any such inference, although there may be some degree of negligence, yet Courts of Equity will not grant relief."

In *Adams' Equity page* 314, the rule is laid down in these terms : " In order to the introduction of this equity it is essential that there be intentional deceit in the Defendant, or at all events, that degree of gross negligence which amounts to evidence of an intent to deceive. If, therefore, the party standing by be ignorant of his right, or if he has been merely careless and negligent; as where a mortgagee or trustee, by not taking the title deeds, or by subsequently parting with them, has enabled the mortgagor or *cestui que trust* to commit a fraud, the mere circumstance of his having done so will not warrant relief against him."

The case of *Brewer vs. Boston and Worcester Rail Road Corporation*, 5 *Met.* 478, fully sustains the position of the Appellant, and the case of the *Boston and Worcester Rail Road Corporation vs. Sparhawk id.* 469, is nearly to the same effect. In the case of *Parker vs. Barker*, 2 *Met.* 423, the declaration of the demandant, that " he would relinquish his claims on the demanded premises," upon which a party had acted, was held not to estop him from asserting his claim, although the Court assign as the reason, that it was a parol promise to relinquish title to real estate, and was therefore inoperative and void by the statute of frauds. And it has also been held in 20 *Conn.* 98, 568, that " an admission will not take effect as an absolute estoppel, unless it be made with full knowledge of the right to be estopped, and with the design or effect of creating an impression that it does not exist or will not be enforced."

There are numerous other cases cited in the books showing the application of the principle, but it is unnecessary to examine them at greater length. I think the true rule to be deduced from the authorities is, that the party sought to be estopped, must have been guilty of constructive fraud, or gross neglect, in regard to the subject matter claimed as an estoppel, in order to conclude him from asserting the fact as it really exists. Or, to state it in another form, there must have been an express design that the act or statement should influ-

ence the action of another.   With respect to the other requisites or conditions necessary to constitute the estoppel, no question is raised.

We are then brought to enquire what is the effect of the application of this principle upon the rights of the parties to this action.   As between the Plaintiff and the grantor of the Defendant, I suppose there can be no pretence that the Plaintiff would be estopped from asserting his legal claim to the premises, by reason of the agreement between him and Parker.   The land claimed by Plaintiff in this action, is a strip between six and seven feet in width extending across one end of lot 3, the principal value of which it would appear, consists of a spring situated upon it.   This spring had been walled up by Parker, previous to the agreement between him and Plaintiff, and it does not appear that Parker expended one dollar upon the land claimed by Plaintiff, or that his position with reference to the premises in dispute or his own property, was in any respect changed, or that he would have been in any way prejudiced by permitting the Plaintiff to assert his legal rights.   If any estoppel exists therefore against the Plaintiff, it must arise by virtue of the purchase from Parker by Defendant, and the representations made by Plaintiff to Defendant previous to such purchase.   It may be remarked that no survey was had of the lot at the time of the agreement between Parker and Plaintiff, respecting the division line, nor any attempt made to ascertain the true line, save that " Parker pointed out to the said Plaintiff a certain stake as the point of intersection of the north line of said lot three and Pleasant street," from which the number of feet was measured off called for by Plaintiff's deed from Story. The error into which Plaintiff was led therefore, was occasioned by the erroneous statement of the grantor of the Defendant, respecting the line of Pleasant street, a circumstance not wholly unimportant in one aspect of the case.

There is no pretence in the case that the Plaintiff was actuated by any wrong or fraudulent motive whatever, in making to the Defendant the statement he did with respect to the division line between him and Parker.   Did he make such statement with the express design, or any design of influenc-

33

ing the action of the Defendant in the premises—of inducing him to purchase of Parker, or in any manner advise and encourage the purchase ? I have searched the case in vain to find the slightest evidence of this, either in the finding of the Court upon this point, or any of the surrounding circumstances, so far as reported in the paper book. The facts as found by the Court in this behalf are as follows : " The said Defendant just prior to the date of his purchase of said easterly portion of lot three, had a conversation with said Plaintiff, in regard to the division line. between the said property. That at the time of this conversation the division fence aforesaid had not been completed, but its location was designated and marked out along the line agreed upon as aforesaid by stakes and pieces of board, so as to be plainly visible. That said Defendant during said conversation, stated to said Plaintiff, that he (Defendant) was about to purchase said property of the said Parker, and wished to ascertain the division line. That said Plaintiff thereupon pointed out the said stakes and pieces of boards as indicating said line of division, and stated that Mr. Parker had agreed to build the division fence along said line. That at this time said Plaintiff and Defendant supposed and believed that said line was the true dividing line between the said properties, according to the terms of their said deeds. That said Defendant purchased the said property of the said Parker, relying upon the aforesaid statements of said Plaintiff as to the said line of division." This line it appears was acquiesced in by the Plaintiff for some three years.

This, so far as the case shows, was all that transpired between the Plaintiff and Defendant with reference to the division line, previous to the purchase by the latter of the premises. I think no one would conclude from the above that the Plaintiff *designed* to influence the Defendant in any manner whatever with reference to the purchase. To him it was doubtless a matter of entire indifference whether Parker or Defendant owned the premises. He certainly had nothing to gain in either case, although, by reason of the Defendant's purchase he has been made to suffer in consequence of an honest though mistaken statement as to the division line

between himself and his neighbor. The circumstances and surroundings of this conversation between Plaintiff and Defendant, when carefully noted, are far from being such as to raise strong equities in favor of the Defendant. It does not appear that it was more than casual, or that the topic of purchase and boundaries was chiefly discussed between the parties, or that the Plaintiff had any idea of the high value attached by Defendant to the spring, or that his purchase was to depend to any extent on information furnished by Plaintiff —all circumstances entitled to consideration in determining the measure of the responsibility of the Plaintiff for his acts and statements.

If the principle of an estoppel *in pais* is not properly applicable to this case, on the ground above stated, is it any more applicable on the only remaining one, of such gross neglect on the part of the Plaintiff in informing himself of his rights, that he should not be entitled to assert them in a court of justice? This position I think even less tenable than the former. The Plaintiff had acquired title to his lot less than five months previous to the purchase by Defendant, and it would appear was not then in personal occupation of it. I cannot think he was bound to be at the expense of an actual survey, immediately upon acquiring title, in order that he might be certain of making no errors in his statements in regard to the boundaries, or that he should be mulcted in damages for such errors for lack of exact knowledge as to the extent of his lot. It is true he was not bound to give the information he did, or to make any statements in reference to the matter, but it is equally true that the Defendant was not obliged to seek it of him. The sources of obtaining correct information on the subject were equally open to both, and the Defendant could have ascertained the exact size of the lot he proposed purchasing at the same expense, and as readily as could the Plaintiff. The deeds were on record, and a survey could be made in accordance therewith. Clearly, no greater negligence can be attributed to the Plaintiff than the Defendant; and if the latter chose to rely on such knowledge as the former possessed, rather than resort to the legitimate business method of ascertaining the true location of his premises, he

must run his own risk as to the correctness of his information, so long as the entire good faith of the Plaintiff in the transaction stands unimpeached. And it will be remarked that courts are more reluctant to apply the principle of estoppel in these cases, where the boundaries are exactly defined, and may without difficulty be ascertained by reference to title deeds, than in cases where these instruments leave the true location doubtful and uncertain.

There is another fact which, though of itself perhaps not of great weight, yet, taken in connection with all the circumstances of the case, materially tends to impair the equities on which the Defendant relies. The answer alleges no sum in which the Defendant will be damnified or injured if the claim of the Plaintiff is sustained, nor is there any allegation of the value of the premises in dispute or of the improvements thereon, nor has the finding of the Court cured the defect in this respect. The allegation of the answer in this behalf is, "that the existence of said spring upon the said parcel so purchased by Defendant, was a material inducement to said purchase, and that the same entered into the estimate and consideration price paid for said premises by Defendant to the amount of at least $500." This allegation I think not well pleaded to show either the value of the premises in dispute or the amount of injury to the Defendant, if the Plaintiff sustains his action. The real question is, what was the actual value of the spring or premises—not, what value was put upon them by Defendant. To form an issue upon the opinion of a party as to the value of an article, would be rather novel pleading, and, it being simply an operation of the mind, would be an issue somewhat difficult for the party holding the negative to prove.

The Court finds simply (upon this point) that by reason of this spring the premises were greatly enhanced in value. The expression "of great value," as used in law, is a comparative term, of no definite signification, and may mean one dollar or one thousand, or more or less. Where no bad faith is imputed, I apprehend a Court of Chancery would not interfere to oust a party of his legal rights, where the amount in controversy is comparatively unimportant, nor unless his

adversary possessed very superior equities.   Both the plead-
ing and finding of the Court upon this point are too vague
and unsatisfactory.

In fine, the legal title of the Plaintiff to the premises (if he
can assert it) is unquestioned of record, he stands unchal-
lenged *in foro conscientiæ*, and we cannot think the acts or
statements of the Plaintiff, as disclosed by the case, have been
such as to preclude him from claiming a right to property
acquired by the highest title known to the law.   The estoppel
we have been considering is spoken of in the books as an
equitable estoppel, but the term would be a misnomer, if the
doctrine is to be applied to such a case as the record here
discloses.

The judgment below is reversed, and a new trial ordered.