ALBANY,
Jan. 1831.

Demyer
v.
Souzer.

### DEMYER *vs.* SOUZER.

A person entitled to the services of another, standing by and permitting a third person to avail himself of such services, without interposing a claim, or giving notice of his right, cannot maintain an action for such services : So held, where a slave was bequeathed by will to a son-in-law, and a son of the testator who had a bill of sale of the slave, permitted him to labour for the son-in-law without giving notice of his claim.

A new trial will not be granted because the judge nonsuited the plaintiff, if the evidence be such that if the cause had been submitted to the jury and they had found for the plaintiff, the court would have set aside the verdict.

THIS was an action of assumpsit, tried at the Ulster circuit in October 1829, before the Hon. James Emott, then one of the circuit judges.

In May, 1829, the plaintiff commenced this suit to recover for services rendered for the defendant by a negro slave. The slave originally belonged to the plaintiff's father who died in 1802, having by will, given the slave to his wife. The defendent married a sister of the plaintiff, resided with his mother-in-law, and worked the farm on which she lived for about three years before her decease, which happened in 1822 or 1823 ; during all which time the slave worked for the defendant. Mrs. Demyer, by her will, gave the slave to the wife of the defendant, and he continued to work for the defendant for about one year after the death of Mrs. Demyer, when the defendant sold his services for a term of time to a third person. On the trial of the cause the plaintiff produced a bill of sale of the slave, executed by Mrs. Demyer to him, bearing date in 1819, and proved its due execution at its date. The plaintiff was present when the will of his mother was opened and read, and interposed no claim to the slave. A brother of the plaintiff, residing in the same town with the parties to the suit, testified that until the winter of 1829, when the plaintiff and the defendant got involved in a controversy, he never heard of the bill of sale ; and the negro testified that never until the expiration of the time of service for which the defendant sold him, did the plaintiff inform him that he belonged to him. On this evidence the defend-

ant's counsel insisted that the plaintiff was not entitled to re-cover; that under the circumstances of the case a promise could not be implied; and the judge being of that opinion, ordered the plaintiff to be nonsuited, with leave to apply to this court to set aside the nonsuit; which motion was now made.

*J. Van Buren & A. Van Vechten*, for plaintiff.

*C. H. Ruggles*, for defendant.

*By the Court*, MARCY, J.   This case differs widely from *Trongott* v. *Byaes*, 5 *Cowen*, 480.   If a slave deserts his master and goes into the service of another, the master can recover for services performed by the slave before he gives notice of his claim; but this principle should not, I think, be applied to a case where the master never had possession of the slave, and was chargeable with concealing his claim from the defendant while the slave was performing the ser-vices.

There could scarcely be imagined a case where an implied waiver of right to the slave, if any valid right ever vested in the plaintiff, was more clearly made out.   Though the bill of sale declares that *delivery* was made, yet such was not the fact.   Mrs. Demyer continued, after the pretended sale, to exercise the right of ownership over the slave for three or four years without the fact being known that there had been a sale.   This alone was sufficient to render the sale void as against creditors, and perhaps *bona fide* purchasers.   At her death the defendant took the slave under her will.   This was done with the implied assent of the plaintiff.   He knew that the defendant took possession of the slave as his own prop-erty, by virtue of a title which the defendant believed to be valid, and had good reason for so believing; he saw him ex-ercise dominion over him as his own property until he gain-ed his freedom, and did no act to undeceive the defendant for six or seven years.   There were responsibilities attached to the ownership of the slave; and as the defendant, in his own judgment, and in the opinion of the public, was the own-er, he stood the risk of those responsibilities; and the plain-

ALBANY,
Jan. 1831.

tiff's conduct repels all inference of an *implied promise* by the defendant to pay for the services.

But it is said the judge erred in granting a nonsuit; and that he should have left it to the jury to determine whether the plaintiff had waived the fulfilment of the contract of sale, or whether, by his long acquiescence in the assumed right of the defendant, he had not forfeited his own. These, in ordinary cases, are questions which belong to the jury; but where the evidence in favor of the plaintiff's right is so slight, and that which supports the defence so strong, that had the jury found for the plaintiff the court would have felt itself called on to set asid their verdict, it will not send the cause back to the jury because the judge ordered a nonsuit. There was not any contradictory testimony. The dispute is not about the facts, but about the legal effect of them. Taking them altogether they would not, viewed in the most favorable light, have warranted a verdict for the plaintiff.

New trial denied.