Thompson *vs.* Blanchard.                    [303]

Where goods sold or mortgaged are left in the possession and under the control of the vendor or mortgagor, the presumption of fraud declared by the statute may be repelled by proof of good faith; and where there is any evidence of good faith, as for example, where a consideration is shown, the question of fraud, *it seems*, is one of fact for a jury to pass upon.

A., a manufacturer, purchased wool to be paid for by his note indorsed by B. The note was made accordingly and indorsed by B. for A.'s accommodation. At the same time A. executed to B. a writing reciting that B. had indorsed the note to be used in purchasing the wool, and declaring that the wool and the cloth to be manufactured therefrom should belong to B. until the note was paid. *Held*, that the writing was a mere mortgage, and not having been filed as such in the proper town clerk's office, that it was void as against a subsequent purchaser in good faith from A.

Where the owner of goods stands by, and without objection allows another to treat them as his own, and a third person is thereby led to purchase them in good faith, the owner can not recover such goods, or their value, from the purchaser.

And the same doctrine, it seems, applies, although the party who allows another to assume the credit of ownership is not actually present when the act is done by which the third party is deceived.

Thus, where a manufacturer of cloth sells his wool or some portion thereof, and the purchaser voluntarily allows him to carry on the business as before, in his own name, to manufacture the wool into cloth, and to deal with it as his own, such purchaser can not afterwards set up his title to the cloth against a subsequent purchaser in good faith.

Where in an action of trover against the defendants one of them pleads, and the other suffers judgment by default, the latter is a competent witness (under the code of procedure) for the plaintiff against his co-defendant.

A party calling a witness can not impeach his character or assail his credibility by general evidence; but he may prove by other testimony the truth of any particular fact in direct contradiction to the testimony of the witness.

It is not competent, however, for a party calling a witness to give evidence of declarations or statements made by him at another time tending to impair his credibility.

Thompson brought trover in the supreme court against Blanchard and R. C. Wheeler, for a quantity of wool, cloth, yarn, &c. Blanchard pleaded the general issue, and Wheeler suffered judgment by default. On the trial of the issue at the Washington county circuit, before Harris, J. the plaintiff called as a witness the defendant Wheeler, who was objected to [304]

on the part of the defendant Blanchard, as one of the parties and as interested. The objection was overruled. Wheeler testified, among other things, that he executed to the plaintiff a writing as follows:

" J. W. Thompson indorsed for me a note of $685,14, at six months, indorsed by T. B. Wheeler, which note I am to use to buy wool at Valentine Hall's, New-York: said wool so purchased is to be brought to Granville in my name; but said Thompson shall and may own the same, and if it is manufactured at Granville the cloth is also to be his until the said note is paid. And I will, if necessary, execute any further paper to make him secure thereon, and he is not to be in any way liable for manufacturing same.

     May 24, 1846.                  R. C. WHEELER."

Before the execution of the writing, the witness Wheeler had been to New-York and purchased the wool, agreeing to send down an indorsed note for it. He returned to Granville where he resided, made the note mentioned in the writing, procured it to be indorsed as therein stated, and sent it to New-York to pay for the wool. Before the note was sent, part of the wool had been sent up to Granville, and the residue was sent afterwards. Subsequently, on the 2d of March, 1847, he purchased another quantity of wool in New-York, amounting to $498,50, under a similar arrangement, to pay for which the plaintiff signed another note with him at six months for that amount, and on the face of the bill of sale for this wool he executed to the plaintiff another writing as follows: " J. W. Thompson having signed the note given for this wool, has title to the same and the cloth until said note is paid, for value received.

     March 2, 1847.                R. C. WHEELER."

Both lots of wool were received by Wheeler at his factory in Granville, and were manufactured by him into cloth which he disposed of. The defendant Blanchard received from Wheeler some of the cloths to apply on a previous mortgage held by him which covered the factory, and to secure him for advances made for Wheeler. The plaintiff claimed to recover the value [305] of the cloth so received by Blanchard, having demanded

the same before this suit was brought. The plaintiff never had any possession of the wool or of the cloth made therefrom, but he claimed title under the two writings before mentioned, insisting that the effect of the transactions was to vest the title in him until the notes were paid. Wheeler never paid the notes. The said writings *were not filed as mortgages.*

The evidence of the witness Wheeler also tended to show that after receiving the wool in question from New-York, he was the ostensible owner thereof; that he continued to carry on the factory as he had before, claimed the wool and cloth to be his, and used and disposed of them as his own, and that he informed the plaintiff from time to time of what he was doing. The plaintiff resided in the vicinity of the factory, and understood the manner in which the business was conducted. There was no evidence that the defendant Blanchard knew that the plaintiff had any claim on the cloth in question.

The plaintiff offered to contradict, by another witness, some of the facts testified to by Wheeler. The defendant Blanchard objected to the evidence on the ground that the plaintiff having called Wheeler as a witness could not contradict him. The objection was overruled. The plaintiff also offered to prove certain declarations made by Wheeler before the suit was commenced, tending to discredit his testimony or some part thereof. This evidence was also objected to, but the objection was overruled.

The judge charged the jury, among other things, that the written instruments above set forth, executed by Wheeler to the plaintiff, were not mortgages, but on the contrary, that Wheeler having purchased the two lots of wool to be paid for with notes to be indorsed by the plaintiff, the title to the wool did not pass from the vendor until the condition was complied with; that the effect of the agreements between Wheeler and the plaintiff was to vest the title in the plaintiff until the notes were paid; and that the plaintiff was entitled to recover against Blanchard for all the cloth manufactured from such wool, so far as the same could be traced into his hands. The defendant Blanchard excepted to the charge. The counsel for [306]

Blanchard requested the judge to charge that the permission to Wheeler to hold himself out as the ostensible owner of the property, and his acquiescence in the control, possession and management of it by Wheeler, rendered the plaintiff's title fraudulent and void as to Blanchard. The judge refused so to charge, and his refusal was excepted to. The jury found a verdict in the plaintiff's favor for $930, and the supreme court in the fourth district refused to grant a new trial. After judgment, Blanchard appealed to this court.

*N. Hill, Jr.* for appellant.

*J. W. Thompson,* for respondent.

JEWETT, J. It is made a point that the judge at the circuit erred in refusing to charge the jury as requested by the counsel for the defendant, that inasmuch as the plaintiff never had the actual possession of the property in question, but had permitted Wheeler to continue in the possession of it and hold himself out as the ostensible owner, and had acquiesced in his controlling and managing it, the transfer to him was fraudulent and void as against Blanchard the defendant. Since the decisions in *Smith* v. *Acker,* (23 *Wend.* 653,) and *Hanford* v. *Artcher,* (4 *Hill,* 271,) assuming that Blanchard had shown himself to be a creditor or a subsequent purchaser in good faith from Wheeler of the property in question, the proposition, as I understand the principle there decided, can not be maintained as sound. Leaving the possession of chattels in the hands of the vendor, mortgagor or assignor, is not necessarily fraudulent as against a creditor or subsequent purchaser or mortgagee in good faith of the vendor, mortgagor or assignor; but it is only presumptive evidence of fraud, which may be rebutted by the party claiming under the sale, mortgage or assignment, by proving that the transaction was in good faith and without any intention to defraud purchasers or creditors; and the question of *intent* arising in the case is one of fact for the jury to try. As [307] there was some proof, at least of good faith, (that is, a

good consideration,) for the transaction, the request to charge that it was fraudulent and void as against Blanchard, on the ground that it was not accompanied with a delivery and actual and continued change of the possession of the property, was therefore properly refused. In reference to the question of fraud, arising upon that ground, it would have been proper to have charged, that the law presumed the transfer of the property, unaccompanied by delivery and continued change of possession, to be fraudulent and void as against the creditors and subsequent purchasers in good faith of the vendor, mortgagor or assignor; that is, that the law, under such circumstances, presumed that the transfer was without consideration or without a sufficient one, and also that there was some secret trust or an intent to defraud purchasers or creditors; and that the plaintiff could not recover on that ground, unless he had rebutted that presumption by proof, satisfactory to them, that the transfer was made not only in good faith, but that it was without any intent to defraud purchasers or creditors.

But I think the circuit judge as well as the supreme court erred in the construction which was given to the contracts made for the purchase of the wool. I am not able to discover any principle upon which Thompson can be deemed to be the purchaser, although he became responsible to Hall for the payment of the purchase price, as second indorser of Wheeler's notes, for his accommodation. It seems to me to be obvious, from the evidence, that whatever title he got to the wool, he derived it from Wheeler and not from Hall. Wheeler contracted with Hall for the purchase of both lots on his own account, upon a credit of six months, upon condition that he secured the payment of the price by indorsed notes; and although Hall delivered a part of the first lot of wool purchased before the condition was performed, yet the property did not vest in Wheeler until the condition was performed, but then it did (*Covill* v. *Hill*, 4 *Denio*, 324; 2 *Kent's Com.* 497.)

The transaction, as I think, was between Hall and Wheeler, and amounted to a sale and delivery by the former to the latter. The question then arises as to the nature of the transaction

[308] between Wheeler and Thompson, in respect to the wool and the cloth, if manufactured. Did they amount to an absolute sale of the wool by Wheeler to Thompson, or at most were they conveyances, intended to operate as mortgages, to indemnify him against his liability as indorser of the note?

There is no ground to say that Thompson agreed to take the wool at its value, or at any price, and pay the notes himself, and so discharge Wheeler from his liability as maker. The terms of the conveyances, if they do not fully express, clearly imply that they were made not to pass an indefeasible title, but to secure Thompson as indorser of the notes. He was to own or have title to the wool, or cloth if manufactured, no longer than the notes remained unpaid by Wheeler. And besides, after Thompson indorsed the second note, he required Wheeler to convey to him his share of the factory, as *additional* security against his liabilities as indorser. I think that the conveyances amounted to nothing more than mortgages. That they were intended to operate as such between the parties is evinced, as I think, as well from the terms of the conveyances, as their conduct subsequently. The requiring on the part of Thompson of further security, and the giving it by Wheeler, is utterly inconsistent with the pretence that an absolute sale of the wool had been made to Thompson.

If I am right in this conclusion, the conveyances not having been filed, and not being accompanied by an immediate delivery, and followed by an actual and continued change of possession of the wool and cloth, or either, were absolutely void as against the creditors of Wheeler, and as against subsequent purchasers and mortgagees from him in good faith, although they were made in good faith and without any intention to defraud purchasers or creditors. (*Laws* 1833, *p.* 402, §§ 1, 2; *Wood* v. *Lowry*, 17 *Wend.* 492 ; *Smith* v. *Acker, supra.*) The omission to file a mortgage, alone renders it void as against subsequent purchasers, and mortgagees in good faith and creditors of the mortgagor. Blanchard set up no defence on the ground of being a creditor of Wheeler, but he did as being a subsequent purchaser, or mortgagee in good faith. To the ex-

tent of the cloth turned out to him, which he took into [309] his possession as security to indemnify himself against his advances for Wheeler without notice of the plaintiff's prior right, I see no reason why he is not entitled to the protection afforded by the statute.

There is, I think, another principle which would protect Blanchard from liability to the plaintiff for the value of the cloths, which he in good faith purchased of Wheeler; if the jury, upon the evidence, should find the facts to authorize its application, even assuming that the plaintiff in fact was the absolute owner as between him and Wheeler. It is this, that when the owner of goods stands by and voluntarily allows another to treat them as his own, by which means a third person is induced to purchase them *bona fide*, the former can not recover them from the purchaser. In *Pickard* v. *Sears*, (6 *Adolph. & Ellis*, 469,) this principle was thus laid down by Lord Denman : " The rule of law is clear, that where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter, a different state of things as existing at the same time." The effect of allowing the party to contradict his admission in that case, would have been to defeat the title of a *bona fide* purchaser. In *Gregg* v. *Wells*, (10 *Adolph. & Ellis*, 90,) it was held, that if the owner of goods stand by and voluntarily allow another to treat them as his own, by which means a third person is induced to purchase them *bona fide*, the former can not recover them from the purchaser. Lord Denman thought the principle of *Pickard* v. *Sears* might be stated even more broadly than it was there laid down. He said " a party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, can not afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving." The same principles are recognized as sound in *Demeyer* v. *Souser*, (6 *Wend.* 436.) *See also Dezell* v. *Odell*, (3 *Hill*, 215 ;) 1 *Greenl. Ev.* § 207.

There is, I think, no distinction in principle, although the [310] party who enables another to assume the credit of ownership, may not be actually present, when the act is done by which the third party is deceived. (*Cowen & Hill's Notes to Phil. Ev.* 200.) If the evidence is worthy of credit, and that is a question for the jury, Wheeler was not the agent or servant of the plaintiff, to manufacture the wool into cloth, and to sell it and account to him for the proceeds. It was expressly provided by the first bill of sale or conveyance, that although Wheeler might manufacture the wool into cloth, Thompson should not in any way be liable for manufacturing the same. The testimony given by Wheeler is full to show that there was no change in the carrying on the manufactory by Wheeler, from the mode which it had been carried on previously to the bringing the wool in question into the establishment; and the manifest object of purchasing the wool was to keep the factory stocked. The plaintiff as well as Blanchard lived in the immediate vicinity of the establishment, and were often in and about it, and must necessarily have known that Wheeler was apparently carrying it on on his account; and the plaintiff, as the witness Whitcomb testified, never pretended to have any control, or to give any directions when he was there, and there is no proof to show that it was known to or suspected by any, besides Wheeler and the brother of the plaintiff, that the latter either had or claimed to have the ownership of, or any interest in, the wool put into the factory, or the cloth manufactured from it. And there was nothing in the manner of conducting the business after the wool was purchased of Hall and carried into the factory, calculated to apprise third persons of any change in the ownership, or of the plaintiff's title or interest in the wool or cloth. But on the contrary, every thing done there, tended to show that Wheeler continued to be the owner as before. He carried on the establishment just as he had previously; he manufactured, paid his workmen, bought, sold, exchanged and managed in such way as he thought fit, and as he had previously, in his own name; disposing of the wool and cloth as his own, with the knowledge and acquiescence, as

he testified, of the plaintiff. And he testified also that the plaintiff knew that Blanchard from time to time purchased or had cloth out of the establishment, upon some account [311] with Wheeler, and acquiesced in it. Under such circumstances, it would be a violation of good faith, to permit the plaintiff now to set up any agreement between him and Wheeler, to defeat the title of Blanchard so far as he is a *bona fide* purchaser or mortgagee of any part of the property in question.

Wheeler was a competent witness for the plaintiff, and was subject to the same rules of examination as any other witness, and his testimony was liable to be rebutted by adverse testimony. (*Code of* 1848, §§ 344, 348.)

. It was objected that the plaintiff was improperly allowed to contradict Wheeler by the witness Thompson. The rule is well established, that when a party offers a witness in proof of his cause, he thereby in general represents him as worthy of belief. He is presumed to know the character of the witnesses he introduces ; and having thus presented them to the court, the law will not permit the party afterwards to impeach their general reputation for truth, or to impugn their credibility by general evidence, tending to show them to be unworthy of belief. (1 *Greenl. Ev.* § 442.) But the party calling a witness is not precluded from proving the truth of a *particular fact* by any other competent testimony, in direct contradiction to what such witness may have testified ; and this not only when it appears that the witness was innocently mistaken, but even when the evidence may collaterally have the effect of showing that he was generally unworthy of belief. (*Lawrence* v. *Baker,* 5 *Wend.* 305 ; *McArthur* v. *Hurlbert,* 21 *id.* 190 ; 1 *Greenl. Ev.* § 343.)

It was competent then, for the plaintiff, to show what took place at the time the deed was given by Wheeler to Thompson, and to show that neither the plaintiff or Wheeler made the declarations to which Wheeler had testified. The plaintiff, however, went further, although objected to, and gave evidence that Wheeler at a subsequent time made statements contradictory to the statements to which he testified. Such evidence is only allowable in any case, with a view to the impeachment of the

witness; a ground not open to the party producing the witness. [312] The judge therefore erred in admitting that evidence. (*The People* v. *Safford*, 5 *Denio*, 117.) The judgment must be reversed, and a new trial granted, with costs to abide the event.

Ordered accordingly.