Dehio, J.
 

 The plaintiff’s possession of the land on which his brick-yard was situated, and through which the water-course
 
 *245
 
 ran, was
 
 prima facie
 
 evidence of ownership in him. As such owner he was presumptively entitled to have the stream run in its natural channel, without obstruction or diversion. It is true that when he went into possession he found that the water had been diverted by the defendant’s dam above; and it is to be inferred that such diversion had been acquiesced in by the parties who had preceded him in the possession, and such acquiescence was continued on his part until the commencement of this action. But the whole period, during which the several successive proprietors forbore to assert their right to have the water returned to its natural channel, was not sufficient to raise the presumption of a title so to divert it. But the plaintiff did not show any privity between himself and the former possessors, or explain how it happened that the defendant was permitted to make the diversion, at the time it was first effected, some twelve or thirteen years before the plaintiff went into possession; and hence it is averred by the- defendant’s counsel that the jury might have presumed, if the question had been submitted to them, that the defendant was himself at that time the owner of the premises now possessed by the plaintiff, in which case he would have had a right to divert the water as there would have been no one entitled to object; and if the plaintiff subsequently took title under him, he would have held in subordination to the defendant’s right to continue the diversion. It is urged that this presumption should attach in the absence of any proof to the contrary, because the plainfiff holds the affirmative in this action, and because, moreover, everything must be deemed to have been rightfully and lawfully' done unless the contrary- be shown. This reasoning is not satisfactory to my mind. Assuming that the defendant’s ownership of both parcels at the time he diverted the stream from the lower one, would have concluded his subsequent grantee of that parcel, the suggested unity of ownership was a fact which the defendant was bound to prove on his- own part. The diversion was
 
 prima facie
 
 a wrong, and though in its nature it was capable of excuse or justification, by proof of the existence of other ■facts which would render it lawful, the burden of showing the
 
 *246
 
 existence of such facts was upon the defendant. It is as easy to suppose that the person who owned the brick kiln lot when» the defendant’s mill was built, granted to the defendant the right to divert the water, as to conjecture that the diversion was a lawful act, on account of the ownership at that time of both parcels in the defendant; and yet it is clear that a jury would not be authorized to find a grant upon the evidence in this easel No doubt there is an inference of some weight arising out of an acquiescence in such an act for a considerable length of time, short of the period of prescription, that a justification of some sort existed; but the law, upon motives of policy, and to avoid uncertainty and the hazard of contradictory determination, has fixed upon the period of twenty years as the shortest time for admitting the presumption of a grant. Where a diversion has not continued for that period, it is considered hostile to the rights of the parties entitled to have the stream run in its natural channel. Stress is laid upon the circumstance that the plaintiff has not connected himself with the title of the party in possession when the diversion took place; and we are, in effect, asked to intend from this that the then owner was a stranger to the plaintiff’s title, but that he in some legal manner consented to the act of the defendant. But as the plaintiff’s possession entitled him to be considered the owner, the legal intendment is that he derived his title from some former owner. If he was an intruder upon the lands of another person, and that other, or his predecessor in the title, had granted the right to divert the water to the defendant, these being affirmative positions, it was for the defendant to prove their existence on his own part.
 

 The circumstance, that the plaintiff and his predecessors in the possession had received the diminished supply of water for nearly twenty years, did not legally tend to show a license; for if the deprivation had been total it would not have had that effect. The same may be said of the evidence that the plaintiff took down his dam in time of high water. He had no right to keep up such an obstruction at such a time if it tended to overflow the lands of the proprietors on the stream above.
 
 *247
 
 Upon the whole this seems to me the common case of an unlawful diversion of water for a period a little short of that which would enable the jury to presume a consent, and that it would have been erroneous to submit it to the jury to find either a grant or license.
 

 The other branch of the charge was also correct. The aqueduct was an artificial structure erected by the defendant to enable him to divert the principal part of the water of the stream, and yet to conduct the remainder down the natural bed of the stream. The plaintiff had a right to have the whole ■ stream pass that point of its course in its natural bed, and he did'no wrong to any one in erecting a dam on his own land below, provided it was such a one as would not have caused any injury to the defendant provided he had not interfered with the natural channel. This was the aspect in which the judge submitted the case.
 

 The judgment must be affirmed.
 

 Sellen and Davies, Js., expressed no opinion; all the other judges concurring,
 

 Judgment affirmed.