## THE BRISTOL HYDRAULIC CO. ET AL. *v.* BOYER.

WATERCOURSE.—*Dam Backing Water on Mill of Non-Riparian Proprietor.* —*Easement.*—A non-riparian proprietor of a mill situated near a watercourse, and propelled by water drawn from and returned to such watercourse by means of races constructed through the intervening land, under grants authorizing the same, may maintain an action against a riparian proprietor below the tail-race, who so obstructs the flow of the watercourse as to back water upon the water wheels of the plaintiff's mill; and this regardless of whether or not the plaintiff has a grant from the riparian proprietors between the points where such races severally connect with the watercourse.

SAME.—*Variance.— Words and Phrases.*—The fact that the plaintiff alleges in his complaint, that his mill is situated "on" the watercourse does not amount to an allegation that he is a riparian proprietor, at variance with the real extent of his ownership.

SAME.—*Amendment deemed Made.—Supreme Court.*—An amendment of the complaint in such case so as to fit the evidence, being one that might be made below, will be deemed by the Supreme Court, on appeal, as having been made.

SAME.—*Rights of Upper and Lower Proprietor.—Floods.*—A lower riparian proprietor has no right to so construct his dam as, in times of ordinary freshets, to throw the water back upon the premises of the proprietor above; and, if he does, he is responsible in damages. He, however, is not responsible for damages occasioned by extraordinary floods, against which ordinary skill and foresight could not provide, though the backing of the water be increased by his dam.

SAME.—*Condemnation of Site for Dam, etc.—Extent of.*—The defendant in such case introduced in evidence the record of condemnation, under the act of March 11th, 1867, 1 R. S. 1876, p. 829, of the land on which their dam was erected, and of the right to thereby overflow certain other lands situated below the plaintiff's premises.

*Held*, that such condemnation gave the defendant no right to overflow the premises of the plaintiff.

From the Elkhart Circuit Court.

*J. H. Baker* and *J. A. S. Mitchell*, for appellants.

*J. Morris* and *R. S. Taylor*, for appellee.

WORDEN, J.—This was an action by the appellee, against the appellants, to recover damages for erecting and maintaining a dam across a stream of water, and thereby backing the water upon the property and mill wheels of the plaintiff, situate above the dam of the defendants.

Demurrer to the complaint, for want of sufficient facts, overruled. Issue; trial; verdict and judgment for the plaintiff.

We will consider the points made in the brief of counsel for the appellants, for a reversal of the judgment.

It is conceded that the complaint is good, if some exhibits filed with it do not legitimately constitute a part of it. We think they do not, as they are not the foundation of the action. The complaint was sufficient.

The other questions made arise on a motion for a new trial.

As we understand the case made, the plaintiff was the owner of some land and mills near to, but not adjoining, the Little Elkhart River. He was not a riparian owner; that is, he did not own the river bank near to which his mills were situate. His mills were propelled by water taken from the Little Elkhart River by means of a dam across that river, above the point opposite to which his mills were situate. The water was conducted by a race from his dam to his mills, and thence by a tail-race back into that river, a short distance above its confluence with the St. Joseph River. The defendants' dam was across the St. Joseph River, below its junction with the Little Elkhart, by means of which the water was backed up in the Little Elkhart and in the plaintiff's tail-race, to the obstruction of his mill wheels. The plaintiff had an easement in the land occupied by his dam, head-race and tail-race, granted

for the purpose of authorizing the diversion and flow of the water, but he may not have shown that he had acquired the right from all the riparian owners between his dam and the mouth of his tail-race, to divert the water from its natural flow in the bed of the river for the use of his mills.

The appellants claim, as we understand the brief of counsel, that on these facts the plaintiff can not recover; or, if he could recover on the facts, the case made by the evidence differs from that stated in the complaint, and therefore he can not recover in this case. We can not state the positions of counsel for the appellants better than is shown by the following extracts from their brief. They say:

"We submit at this point two propositions:

" *First.* A non-riparian owner of real estate can not acquire a *right*, as against a lower or upper riparian owner, to divert the water from the natural channel of a flowing stream, in such a sense as that he can maintain an action for damages for the obstruction of his easement or right to divert it.

" *Second.* If a non-riparian owner can acquire a legal right, as against upper and lower riparian owners, to divert the water from a stream, then, in order to recover for an invasion of that right, he must describe the right as it is, and not as an actual riparian right.

" In order to enable the appellee to maintain his action against the appellants at all, he must first show that he has a right to the use of the water in the stream which he claims has been obstructed.

"A party suing for the obstruction of his rights to the use of a stream of water must first establish a right in himself to have the water flow in the manner in which he claims its flow has been obstructed. *    *    *

" The 13th instruction asked by the appellants presents this question:

" It assumes that every riparian owner of land has a right to have the stream flow through or along his land without diversion, and the court was asked to instruct the jury, that if the appellee diverted the water from the stream, and did not own the land at the point of diversion and between that point and the place where it was again returned, then such diversion was *prima facie* wrongful, and the burden of proof rests upon him to show his right to divert the water from the stream. Ever since the Year Books, it has invariably been held that it is illegal to divert a watercourse, unless authorized or justified by the particular circumstances of the case. Angell on Watercourses, sec. 97."

The plaintiff had a right to construct and use his dam, his mills and his head and tail races. He also had the legal right to have the water flow from the mouth of his tail-race in the channel of the river, without obstruction from below backing the water upon his premises.

And we think clearly he could maintain the action without showing that he had acquired the right from the riparian owners of the land intermediate the point at which the water was taken from, and that at which it was returned to, the river, to divert the water from its natural channel and apply it to the purpose of propelling his mills.

If the plaintiff wrongfully diverted the water from the river, to the injury of such riparian owners, it was for them and no one else to complain of the injury. The plaintiff may have been a wrong-doer in respect to the riparian owners mentioned, but that is no defence to an action for the wrong done by the defendants, who are not such intermediate riparian owners, in erecting their dam, and thereby backing the water upon his premises, to his injury.

The analogies of the law are clearly with the plaintiff. Thus, in the case of *Cutts v. Spring*, 15 Mass. 135, the

plaintiff brought an action of trespass *q. c. f.*, against the defendant for cutting timber upon his land. The plaintiff was in possession of the land, but the title thereto was not in him, but in the State. The court, in concluding the opinion in the cause, said:

" The action therefore is rightly brought, and the value of the trees is the proper measure of the damages. For the Commonwealth has a right to call the plaintiffs to account, by a suit for the mesne profits, or in some other way; and as the defendants were wrong-doers to the plaintiffs, these latter ought to be in possession of the value of the trees, as a fund to meet the claim of the Commonwealth. If not called upon, they have a right to keep the money for their own use, being accountable to none but the Commonwealth."

To the same effect are the following cases : *Graham* v. *Peat*, 1 East, 244 ; *Cook* v. *Howard*, 13 Johns. 276 ; *Outcalt* v. *Durling*, 1 Dutch. 443 ; *Inhabitants of Barnstable* v. *Thacher*, 3 Met. 239 ; *Townsend* v. *Kerns*, 2 Watts, 180.

The principle settled by these and other decisions is, that one having the possession of property may maintain an action against a wrong-doer for an injury thereto, which can not be defeated by showing the title to be in some one else than the plaintiff.

We see no good reason why the principle should not be applicable to such a case as the present. The plaintiff's action ought not to be barred, as we think, on the ground that he had not acquired the right from the riparian owners mentioned, to divert the water from its natural channel. He may be called upon by such owners to respond in damages for doing so. But, whether he shall be or not, it is a matter that does not in the least concern the defendants.

The counsel for the appellants have cited in support of their position the following English cases : *The Stockport Waterworks Co.* v. *Potter*, 3 H. & C. 300 ; *Hill* v. *Tupper*, 2 H. & C. 120 ; *Whaley* v. *Laing*, 2 H. & N. 476.

These cases we may remark, without taking up space to state them in detail, are not in point with the one before us. The counsel for the appellee have also called our attention to a later English case, that of *Nuttall* v. *Bracewell*, L. R., 2 Exch. 1, which reviews the former cases, and, though not exactly in point here, strongly favors the view which we have taken of the question.

The appellants have also cited the cases of *Haight* v. *Price*, 21 N. Y. 241, and *Parker* v. *Griswold*, 17 Conn. 288. We do not regard either of these cases as in point.

They were both actions by riparian owners, for the diversion of the water from its natural channel.

We proceed now to consider the supposed variance between the case made by the evidence and that stated in the complaint. The objection, as we understand it, is, that the complaint alleges that the plaintiff was a riparian owner, while the evidence shows that he was not. The plaintiff, in the first paragraph of his complaint, stated his rights as follows: That "he was possessed and the owner of a certain grist and flouring mill, and a certain saw-mill, situate on the Little Elkhart River in the county of Elkhart and State of Indiana, and above the premises of the defendants hereinafter mentioned, and had the right to have the water flow from his said mills and from the wheels thereof, in the natural channel of said river," etc.

We do not think this language necessarily implies that the plaintiff was a riparian owner. He says, to be sure, that his mills were "situate *on* the Little Elkhart River." But the word "on" is frequently used in a sense different from "superimposed" or "superincumbent." Mills are not built *on* a river in the sense in which boats run *on* a river.

We speak of towns and cities as being upon certain rivers, meaning thereby that they are adjoining or near to the rivers. Mills may not be usually built so as to occupy the immediate banks of rivers. We believe they are frequent-

ly, if not usually, built at some distance from the rivers. When a mill is said to be on a given river, it is not, as we think, necessarily understood that the mill occupies the immediate bank of the river; nor does the statement imply that it is within any particular distance from the river.

The fair, substantial meaning of the allegation in the complaint, we think, is, that the plaintiff's mills were so situate as to be propelled by the waters of the river mentioned.

But, if in this there is doubt, the variance between the allegation and the proof was not material within the sense of the statutes of amendments, and the complaint might have been amended in the court below, so as to correspond with the proof, and will be deemed amended here. 2 R. S. 1876, p. 80, secs. 94, 95; Id., p. 246, sec. 580.

A question is made as to the instructions refused on the subject of damages occasioned by high water.

On this subject the court gave the following instructions:

"13. I have said that Boyer, as the owner, has the right to have the water flow away from his premises, in all natural, ordinary conditions. I mean by this all stages and conditions of the stream at the varying seasons of the year, whether of high or low water, if occurring by natural regularity. And every owner below, erecting a dam, is bound to know and act on such varying conditions of the stream, or failing to do so, if injury follows to the owner above, is lawfully required to respond in damages.

"14. But, while this rule holds as to all ordinary, natural conditions, it does not hold as to conditions which are extraordinary. Thus, if an injury result from an overwhelming, exceptional, extraordinary flood, against which ordinary caution and foresight could not provide, even though increased by the dam of the owner below, then the owner below is not responsible in damages."

These charges, in our opinion, stated the law correctly; and they were so full and explicit as to render unnecessary some charges asked by the appellant on the same subject.

The lower proprietor has no right to so construct his dam as, in times of ordinary freshets, to throw the water back upon the premises of the proprietor above; and if he does so he is responsible for the damages. But he is not responsible for damages occasioned by extraordinary floods, against which ordinary skill and foresight would not provide, though the backing of the water may be increased by the dam. These propositions are very well settled in the cases of *McCoy* v. *Danley*, 20 Pa. State, 85, and *Casebeer* v. *Mowry*, 55 Pa. State, 419. We make the following extract from the opinion of LOWRIE, J., in the former case:

" A distinction is taken between the ordinary stage of the water, and at its ordinary stage at particular periods. The former is without meaning unless it means *the average stage;* for there is no ordinary stage of any stream in this country for the year round. A man may make his dam according to the ordinary, but not according to the average stage of the stream. But what is the ordinary stage? That depends upon seasons and weather. The ordinary stage, in ordinary rainy seasons, is one thing, and in ordinary dry seasons, is another. The ordinary stage in March is high, in August, low. The ordinary rises of streams are matters which every one is expected to provide against, because, with ordinary care, he can calculate upon them. The owner of a dam is not answerable for damages caused by his dam, combined with an act of Providence. But an act of Providence, in legal phraseology, means an accident against which ordinary skill and foresight are not expected to provide. It does not include those floods which happen so frequently that men of ordinary prudence are expected to calculate upon them; and, against such swellings, the defendant was bound to provide when he erected his dam."

There is another point made by the counsel for the appellants :

On the trial, the defendants gave in evidence the record of the condemnation of certain lands by the Bristol Hydraulic Company, for the purposes of its water power. The point made in respect to this evidence may be best stated in the language of the brief. The counsel say:

"The theory of the court was, and the case was so put to the jury, that only the land described in the proceedings for appropriation or condemnation passed, and even though there might have been annexed to these lands a right or easement to flow the water back on the appellee's lands, as claimed in the several paragraphs of answer, yet it did not pass to the Hydraulic Company by these proceedings.

"We respectfully submit that whatever right Kane, Thompson, Fargo and others had in the lands appropriated, and all rights appurtenant to it, passed to the Hydraulic Company, and that the ruling of the learned court was erroneous."

The record offered in evidence shows that the board of directors of the Hydraulic Company passed a resolution, which was afterward duly filed in the office of the clerk of the court of common pleas, by which they resolved upon the condemnation of a piece of land on which to abut their dam, about which no question arises here. The resolution then proceeds as follows :

"And whereas the erection of said dam will cause to be overflowed the following described land, to wit:" (Here the land is described and its alleged ownership.) " And said company does hereby appropriate the above described land to its own use, to be overflowed by the erection of said dam, and the president of the company is authorized to take such steps as may be necessary to perfect the title of the company in and to the above described property."

The question raised is, whether any easement appurtenant to the land thus appropriated, of the right to overflow land lying higher up on the stream, passed to the company by the appropriation thus made.

We feel clear that this question must be answered in the negative. The statute under which the appropriation was made, in providing for the manner of making it, enacts, that " The company shall forthwith deposit with the clerk of the circuit, or other court of record in the county where the land lies, a description of the land intended to be appropriated, and the rights and interests sought to be acquired, and such land, and such rights and interests therein, shall belong to such company, to use for the purposes specified, by making or tendering payment as hereinafter specified." 1 R. S. 1876, p. 832, sec. 12.

This statute very clearly contemplates that if any rights or interests are sought to be acquired other than the simple land itself, they are to be specified in the instrument of appropriation to be filed in the clerk's office. And when the land and the rights and interests specified are appropriated, they belong to the company only " to use for the purposes specified."

Now, in this case, the resolution of the board, filed as the instrument of appropriation, starts out, so far as the land in question is concerned, by saying that it will be overflowed by the erection of the dam, describing the land simply, without alluding to any rights or interests connected with or appurtenant to it; and it is appropriated for the use and purpose of being overflowed by the erection of the dam, and for no other use or purpose whatever.

It is quite clear, that by the appropriation the company acquired no right to overflow any other land than that appropriated.

We regard the case as entirely different from one of a sale by the owner of a dominant estate, or by the sheriff on execution against him, which might carry with it an easement appurtenant thereto without special mention of the appurtenance. See *Morgan* v. *Mason*, 20 Ohio, 401.

We have thus considered the questions raised in the cause by the appellants, and find no error in the record.

The judgment below is affirmed, with costs.