The New York Rubber Company, Appellant, *v.* John Rothery et al., Respondents.

To constitute an equitable estoppel there must have been some act or admission by the party sought to be estopped, inconsistent with a claim he now makes, and done or made with the intention of influencing the conduct of another, which he had reason to believe would, and which did, in fact have that effect. Silence will not estop unless there is not only a right, but a duty to speak.

Where, therefore, a riparian owner saw the owner on the opposite side of the stream erecting a factory upon his premises and digging a race which she knew would return the water, diverted from the stream, to it at a point below her land, *Held,* that her omission to object in any way to the proposed diversion of the water, did not constitute an estoppel barring an action to recover for such diversion.

An action is maintainable for such a diversion of the waters of a stream which materially diminishes the natural flow and, at times, takes substantially all of the water from the stream.

(Argued October 10, 1887; decided November 29, 18.,7.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 11, 1885, which affirmed a judgment entered upon a verdict directed by the court.

This action was brought to recover damages for the alleged diversion of the waters of a stream.

The parties were owners of lands adjoining and on opposite sides of the stream. Upon defendant's premises was a factory run by water taken from the stream through a race from a pond above. The tail race of the mill, as claimed by plaintiff, returned the water diverted from the stream to it at a point so far down the stream that none of it flowed past plaintiff's premises.

The further facts appear in the opinion.

*H. B. Turner, B. F. Lee* and *W. H. L. Lee* for appellant. The plaintiff and its grantors, owners of lots X and Y, were entitled to have the water of the stream flow by their lots without diversion thereof by the defendants, and the General

Term erred in holding that the defendants "acted within the scope of their rights as riparian proprietors." (Gould on Water Courses, 359, § 204; *Palmer* v. *Mulligan,* 3 Caines, 308; *Platt* v. *Johnson,* 15 Johns. 213, 218; *Merritt* v. *Brinkerhoff,* 17 id. 306; *Blanchard* v. *Baker,* 8 Greenl. R. 253, 266; *Webb* v. *P. Mfg. Co.,* 3 Sumn. 189, 199; *Crooker* v. *Bragg,* 10 Wend. 260, 264; *Garwood* v. *N. Y. C. & H. R. R. R. Co.,* 83 N. Y. 400; *Clinton* v. *Myers,* 46 id. 511; *Arnold* v. *Foot,* 12 Wend. 330; *Atchison* v. *Peterson,* 20 Wall. 507, 511; *Haight* v. *Price,* 21 N. Y. 241; *Prentice* v. *Geiger,* 74 id. 341; *Rochedale C. Co.* v. *King,* 14 Q. B. 122, 134; *Wood* v. *Wand,* 3 Exch. 748, 772; *Embrey* v. *Owen,* 6 id. 353, 368; *Harrop* v. *Hirst,* 4 id. 43, 45; *Branch* v. *Doane,* 18 Conn. 233; *Monroe* v. *Stickney* 48 Me. 462; *Amosk. Mfg. Co.* v. *Doodale,* 46 N. H. 53; *Tuthill* v. *Scott,* 43 Vt. 525; *Graver* v. *Sholl,* 42 Penn. St. 58; *Hendrick* v. *Cook,* 4 Ga. 241.) The diversion itself is unlawful, and is to be distinguished from the right to take water from the stream. (*Elliott* v. *F. R. R. Co.,* 10 Cush. 191; *Dumont* v. *Kellogg,* 29 Mich. 420; *Wadsworth* v. *Tillotson,* 15 Conn. 366; *Hartzall* v. *Sill,* 12 Penn. St. 248; *Coalter* v. *Hunter,* 4 Rand. 58.) Plaintiff has parted with none of its rights as a riparian proprietor, and is not estopped from asserting its rights. (Boone's Code Pleading, § 67.) To constitute an estoppel in such a case as this, there must be something in the nature of a lack of good faith — some superior knowledge of facts concealed from one person by another whose duty it is to speak. (Bigelow on Estoppel, 484.) A party making a representation of a matter of law and not of fact, is not estopped. (*Storrs* v. *Baker,* 6 Johns. Ch. 166; *Tilton* v. *Nelson,* 27 Barb. 595; *Brewster* v. *Striker,* 2 Comst. 19.) Defendants having an equal opportunity of knowledge of the facts with Mrs. Smith, there was no duty cast upon her to speak. (*Giraud* v. *Giraud,* 58 How. 175; *Hill* v. *Epley,* 31 Penn. 331; *Taylor* v *Ely,* 25 Conn. 250; *Viele* v. *Judson,* 82 N. Y. 32.) The plaintiff stands in the same position as its grantor. (*Haight* v. *Price,* 21 N. Y. 241, 245, 247.) Water rights

of this nature are within the statute of frauds, and an easement in a water-course can only be created by deed or prescription. (*Babcock* v. *Utter*, 1 Keyes, 115; *Haight* v. *Price*, *supra*; Gould on Water Courses, §§ 300, 321.) The doctrine that an executed license is irrevocable is confined to those licenses under which, when executed, it cannot be claimed that any estate or interest in land passes, or to licenses given for a valuable consideration. (*Brown* v. *Woodworth*, 5 Barb. 550, 555; *Babcock* v. *Utter*, 1 Keyes, 115, 116; *Reuch* v. *Kerr*, 14 Serg. & R., 207; *Jameson* v. *Milliman*, 3 Duer, 255.) The fact that the defendants have erected expensive improvements, and that to cause the water to flow as it flows by nature will cause inconvenience and loss, is not sufficient to deprive the plaintiff of its rights. (*Corning* v. *Troy I. & N. Fact'y*, 40 N. Y. 191; *Viele* v. *Judson*, 82 id. 23, 33, 40; *T. Bkg. Co.* v. *Duncan*, 86 id. 221, 230; *Muller* v. *Pondir*, 55 id. 325, 334; *Lawrence* v. *Brown*, 5 id. 394, 395; *Malloney* v. *Horan*, 49 id. 111, 115; *Hutchins* v. *Hibbard*, 34 id. 24, 27; *Brant* v. *Virginia C. Co.*, 93 U. S. 326, 337; *Steele* v. *Smelting Co.*, 106 id. 448, 456.)

*H. H. Hustis* for respondents. A riparian owner may divert the water that flows upon or by his land for the purpose of propelling machinery upon his land, and then restoring it to the natural stream. (*Prentice* v. *Geiger*, 74 N. Y. 345; *Bullard* v. *S. Vict. Man'fg Co.*, 77 id. 531; *Garwood* v. *N. Y. C. & H. R. R. R. Co.*, 83 id. 405; *Clinton* v. *Meyers*, 46 id. 511.) The plaintiff is estopped from raising the question of diverting the water from the creek by the race-way. (*Corning* v. *Troy I. and N. Factory*, 40 N. Y. 191.) The fact that Mrs. Smith remained silent while the defendants built the race and erected extensive buildings, constitutes an estoppel. (*Town* v. *Needham and Harvey*, 3 Paige, 545; *Thompson* v. *Blanchard*, 4 N. Y. 303; *Brown* v. *Bowen*, 30 id. 519.) As the plaintiff bought the property with the race-way on the defendants' lands open and visible, and they saw the water in it, the defendants buildings, and the manner in which the

water and buildings were used, they cannot complain of the diversion of water now. (*Houston* v. *Wheeler*, 52 N. Y. 641; *Curtiss* v. *Ayrault*, 46 id. 73.)

Peckham, J. The defendants claim two answers were made to the plaintiff's case, each of which was fatal to a recovery herein.

One answer was that the use made by the defendants of the water in the stream was not unreasonable or illegal, or in any way inconsistent with the rights of the plaintiff. The defendants say that plaintiff's lots are on the opposite side of the stream from their land, and that no machinery can be placed on the lots, to be propelled by water, as plaintiff has no land upon which to erect a dam, and there is no fall in the stream between the bridge and defendants' tail race, so that the only use the plaintiff could have for the water in the stream is for domestic purposes, and there being, as they claim, always water in the stream by the plaintiff's lots for such purposes, its rights as a riparian owner have not been injured.

The difficulty with this statement is that there is evidence in the case which tends to contradict it, and which tends to show that the use made by the defendants of the water in the creek was such that at various times the quantity which would otherwise have flowed past plaintiff's lots was perceptibly and materially diminished, and to such an extent that frequently when the water was running through the tail race of defendants there was none running over or through the dam except leakage, and of course none flowing past the plaintiff's lot, the whole substantial part of the water of the stream going through defendants' tail race instead of down its original and natural channel. There is evidence tending to show that the water was not returned to the stream in time to reach that part of the plaintiff's lot which it would otherwise naturally touch.

We do not assume to say this evidence is true. But it raised an issue which the plaintiff was entitled to have decided by the jury unless there was some other defense to the action.

There cannot be much dispute now as to the general rights of riparian owners, or that if the defendants did use the water to such an extent as some of the evidence tends to prove, they used it in a manner that they had no legal right to do. Whether they did or not we do not know. The other answer which the defendants make is that of an equitable estoppel.

It may be assumed that at the time when the defendants built their mill-race and erected expensive buildings for manufacturing purposes, Ruth J. Smith was the owner of the lots in question, and which are now owned by the plaintiff.

The estoppel is based upon the following facts: The defendants built the mill-race upon their own lands and erected their factory also upon their own lands, which factory was to be supplied with water from the stream carried through this mill-race. While Ruth J. Smith was thus the owner of the lots and while the defendants were building this mill-race on their own lands, she saw defendants and their men at work on it and on the factory, and she understood the race was being built to take water from the stream to the shop, and during all the time it was in course of construction she never objected to it in any way or authorized any one to object to it for her, nor did she at the time object to the defendants carrying the water down the race.

These are all the facts upon which an estoppel is claimed and upon which the learned courts below decided that an estoppel existed. They are not sufficient to authorize the presumption of a grant or even a license (*Haight* v. *Price*, 21 N. Y. 241), and defendants must rest their defense upon an estoppel pure and simple. It will be seen there is no element of fraud in the case, nor any evidence that Mrs. Smith led the defendants into making this outlay on any assumption that they had the right to do it when in truth they had not and she knew it and yet induced them to go on and expend their moneys upon such erroneous assumption. Nothing of the sort is pretended. The simple case is presented of an owner of land standing by and seeing an owner of adjoining land make

such use of his own land, as he had a right to without inform-
ing him that if he proceeded thereafter to do an illegal act it
would not be permitted.   The defendants had a right to exca-
vate on their own land and to build such a factory as they
chose, but even if they had no right to dig the mill-race and let the
water in it, and thus, possibly, divert the water from the stream,
the owner of the adjoining land (Mrs. Smith) was not bound to
interfere or protest.   She had the legal right to acquiesce in
the action of the defendants, so far as to refrain from inter-
ference, and her simple knowledge that defendants were thus
engaged did not require her to object under penalty of the loss
of her legal rights.   The cases referred to by counsel for
respondents to sustain the estoppel in this instance do not go to
any such length, and I have been unable to myself find any
that do.

The counsel referred to *Town* v. *Needham* (3 Paige, 545);
*Thompson* v. *Blanchard* (4 N. Y. 303); *Brown* v. *Bowen*
(30 id. 519); *Corning* v. *Troy Iron and Nail Factory*
(40 id. 191).   The first case, that of *Town* v. *Needham*, simply
enforced the well settled rule of equity that where the owner
of real estate suffers another to purchase the estate from a
third person, and to erect buildings thereon under the erroneous
belief that he has a good title, and such owner permits the
purchaser to conclude his purchase and intentionally conceals
from him his title to the property, the owner will not after-
wards be permitted to enforce his title against such purchaser.
In *Thompson* v. *Blanchard* the same doctrine is held
applicable to personal property.   *Brown* v. *Bowen* holds the
same principle, the same element of concealment on one side
and mistake of fact on the other, being present.   To the same
effect is *Trenton Banking Company* v. *Duncan* (86 N. Y.
221).   The English rule is substantially the same.   (*Ramsden*
v. *Dyson*, L. R. 1 H. L. Cas. 129.)   *Corning* v. *Troy Iron and
Nail Factory* is really an authority for the position taken by
the plaintiff here, that no estoppel can be predicated upon the
facts in this case.

There is no pretence that the defendants did not know their

title and their rights quite as well as Mrs. Smith, and none that she in any way induced them to make this expenditure. She was simply passive in the matter and failed to object to the defendants doing what they did do. In this there was no element of an estoppel. To constitute it the person sought to be estopped must do some act or make some admission with an intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, and which act or admission is inconsistent with the claim he proposes now to make. The other party, too, must have acted upon the strength of such admission or conduct. (See *Brown* v. *Bowen supra*, at page 541.) In cases of silence there must be not only the right but the duty to speak before a failure so to do can estop the owner. There was no such duty here. (See *Viele* v. *Judson*, 82 N. Y. 32.)

The judgment of the General Term and of the circuit should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.